Richard I. Arshonsky [SBN 155624]
*rarshonsky@laklawyers.com*
Anne C. Manalili [SBN 193483]
*acmecf@laklawyers.com*
**LEVINSON ARSHONSKY & KURTZ, LLP**
15303 Ventura Blvd., Suite 1650
Sherman Oaks, CA 91403
Tel: (818) 382-3434/Fax: (818) 382-3433

Douglas Gansler (*pro hac vice*)
*douglas.gansler@cwt.com*
**CADWALADER, WICKERSHAM & TAFT LLP**
700 Sixth Street, NW
Washington, DC 20001
Tel: (202) 862 2300/Fax: (202) 862-2400

Jonathan M. Watkins (*pro hac vice*)
*jonathan.watkins@cwt.com*
Aaron C. Lang (*pro hac vice*)
*aaron.lang@cwt.com*
**CADWALADER, WICKERSHAM & TAFT LLP**
227 West Trade Street
Charlotte, NC 28202
Tel: (704) 348-5145/Fax: (704) 348-5200

Attorneys for Plaintiff Nationwide Tax Experts, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONWIDE TAX EXPERTS, INC., | CASE NO. 2:20-cv-10090-CAS-MAA |
| Plaintiff, | Assigned to Hon. Christina A. Snyder |
| vs. | **SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT, THE LANHAM ACT, AND VARIOUS STATE LAWS** |
| TERRANCE SELB, TYLER BENNETT, GEOFF PLOURDE, AMERICAN TAX SOLUTIONS, INC., AMERICAN TAX SOLUTIONS, LLC, GETATAXLAWYER.COM, LLC, BEN GRAUPNER, BEN GRAUPNER INC., DONDAMONDE BARNES, and LEGAL TAX DEFENSE, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | Action Filed: November 3, 2020 |

Plaintiff Nationwide Tax Experts, Inc. f/k/a Tax Relief, Inc. d/b/a National Tax Experts ("Nationwide") brings this action against Defendants Terrance Selb ("Selb"),

LEVINSON ARSHONSKY & KURTZ, LLP

Tyler Bennett ("Bennett"), Geoff Plourde ("Plourde"), American Tax Solutions, Inc., American Tax Solutions, LLC (together with American Tax Solutions, Inc., "ATS"), GetATaxLawyer.com, LLC ("GATL" and collectively with ATS, Selb, Bennett, and Plourde the "ATS RICO Defendants"), Ben Graupner ("Graupner"), Ben Graupner Inc. d/b/a Tax Debt Group ("TDG"), Dondamonde Barnes ("Barnes"), and Legal Tax Defense, Inc. ("LTD") for:  (1) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq*. ("RICO") (Count I); (2) violations of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); (3) unfair and deceptive trade practices (Count III); and (4) tortious interference with contract (Count IV).  In support of its RICO and other claims, Plaintiff alleges[1] as follows:

## INTRODUCTION

1.      Defendants are engaged in a wide-ranging fraud and RICO conspiracy, orchestrated by Selb, that is designed not only to prey on those who owe back taxes by impersonating the government, but also to damage Nationwide's business as much as possible.

2.      Selb, a disbarred attorney, used to work as a consultant for Nationwide, a California-based business that helps taxpayers resolve their tax debts with the government.  Nationwide terminated Selb in March 2018 for, among other things, stealing from Nationwide and advising a client to engage in tax fraud.  He now runs a competing business.  But instead of competing with Nationwide legitimately, Selb and his co-conspirators have chosen shortcuts and fraud.

3.      Defendants are engaged in a nationwide scheme to steal and defraud Plaintiff's customers and prospects using phony government notices.  ATS sends letters to Nationwide's customers and prospects that are carefully designed to look just like letters from the government—down to the use of fake government seals.  The

---

[1] The allegations herein are based primarily on documents and information from consumers and former ATS and GATL employees.  Certain allegations are made on information and belief, as noted in the text.

LEVINSON ARSHONSKY & KURTZ, LLP

official-looking letters claim that the recipients (many of whom are elderly) are about to be thrown in jail, lose their homes, lose their social security benefits, have their property seized, or be subject to other immediate actions by the government—that is, unless they call the number in the letter immediately.

### Fig. 1:  Letter Prepared by ATS



Benefits Suspensions Unit
Madison County
Public Judgement Records
February 21, 2020

**NOTICE OF INTENT TO LEVY SOCIAL SECURITY BENEFITS**

#VWNCV*********MIX ADD 12

AMOUNT DUE: $11,597

DUE BY: 02/29/2020

Dear ▮▮▮▮▮,

This notice has been issued against the debtor ▮▮▮▮▮, because of a lien filing due to the tax liability that has not been paid. This letter serves as a final judgemental notice.

The State of Montana can now take enforcement action such as seizing Social Security benefits and garnishing wages and bank accounts to satisfy the outstanding debt owed. If no action is taken by 02/29/2020 The State of Motnana may permanently revoke benefits, spuspend licenses, and levy any federal tax refund gained this year.

Your debt must be resolved in full to remove the lien. To avoid enforcement, CALL 1(800)561-0124 withing fifteen (15) days of receiving this notice. Failure to respond in time will cause an additional penalty to accumulate and lead to default judgement.

4.     Needless to say, many of the people who receive these letters panic and call the numbers.  The phone numbers connect not to any government agency, but to ATS and its alter ego, GATL—or to TDG or LTD, two other entities that Selb has enlisted to handle the overflow of inbound calls.

5.     The next step in the scam is for Selb, Bennett, Plourde, Graupner, Barnes, and others acting at their direction to convince the callers that the only way to avoid the crisis threatened in the letter is to fire Nationwide—which, they claim, must not be

LEVINSON ARSHONSKY & KURTZ, LLP

1  doing a very good job settling the tax debt—and hire ATS, GATL, TDG, or LTD.  And

2  hiring one of those companies means paying a nonrefundable upfront fee plus recurring

3  fees during the life of the engagement.

4      6.      When customers fire Nationwide and hire one of the Defendants, they end

5  up needlessly paying duplicative fees for work that Nationwide has already

6  performed—and, in some cases, paying for work that is never performed.

7      7.      Defendants' RICO conspiracy thus harms consumers, just as it damages

8  Nationwide's business and reputation.

**PARTIES**

10      8.      Plaintiff Nationwide is a tax assistance firm based in Glendale, California.

11  Nationwide was founded in 2007, and is now one of the largest tax assistance firms in

12  the United States. Nationwide negotiates settlements of its clients' tax debts with the

13  IRS and state agencies, and helps clients enroll in tax relief programs.

15      9.      Defendants ATS and GATL hold themselves out as tax assistance firms

16  based in Los Angeles, California.  Both entities are run by the same people—including

17  Selb, Bennett, and Plourde—and ATS conducts much of its business through GATL.

18      10.     On information and belief, Defendant Selb is an individual who resides in

19  Los Angeles, California.  Selb is the Founder of ATS and the President of GATL.

20      11.     Defendant Bennett—who was a Nationwide employee from March 2018

21  to October 2018—is the Chief Operating Officer of ATS and GATL.  On information

22  and belief, Bennett resides in Los Angeles, California.

23      12.     Defendant Plourde, also a former Nationwide employee, is a Vice

24  President of ATS and the Chief Financial Officer of GATL.  On information and belief,

25  Plourde is a resident of Los Angeles, California.

26      13.     On information and belief, Defendant Graupner is an individual who

27  resides in Los Angeles, California.  Graupner founded and does business through TDG.

28  He is a former Nationwide employee too:  he worked for Nationwide from 2012 to

LEVINSON ARSHONSKY & KURTZ, LLP

LEVINSON ARSHONSKY & KURTZ, LLP

June 2018, initially in an administrative capacity and later as a contractor providing tax resolution services.

14.    Defendant TDG holds itself out as a tax assistance firm based in Hollywood, California.

15.    On information and belief, Defendant Barnes is an individual who resides in Orange County, California.   Barnes used to work for Defendant LTD.   On information and belief, he continues to perform some services for LTD, including marketing services, and has a referral arrangement with LTD.

16.    Defendant LTD holds itself out as a tax assistance firm based in Los Angeles, California.

17.    Nationwide refers to Defendants ATS, GATL, TDG, and LTD collectively as the "Company RICO Conspirators" in this complaint.

## JURISDICTION AND VENUE

18.    This Court has original jurisdiction under 15 U.S.C. § 1121, 18 U.S.C. § 1965, 28 U.S.C. § 1331, and 28 U.S.C. § 1338 because the case arises under RICO and the Lanham Act.

19.    This Court has supplemental jurisdiction over the state law claims asserted here under 28 U.S.C. § 1367.

20.    Venue is proper in this Court under 28 U.S.C. § 1391, given the residences of Defendants identified above.

## FACTUAL ALLEGATIONS

**A.    Selb Faces Disciplinary and Legal Actions Over His Work in Multiple Industries.**

21.    By Order of the Supreme Court of Minnesota, Selb was disbarred from the practice of law on October 27, 1986 because he had:

a.    diverted the proceeds of a personal-injury settlement check and made false

statements to the Lawyers Professional Responsibility Board about the transactions;

b.    failed to incorporate a business he was retained to incorporate and lied about having done so to the client;

c.    misappropriated $26,000 in his capacity as personal representative of the estates of a husband and wife survived by three orphans, provided erroneous accountings to the orphans, and "was otherwise neglectful and failed to account to and was disobedient of orders of the probate court"; and

d.    failed to fulfill his duties as the attorney of record and special administrator of an estate, including by failing to file documents ordered by the probate court.

22.    Selb moved into the elder care space after his disbarment. But that ended in much the same way as his legal career: in 2002, the United States Attorney for the District of Minnesota sued Selb over his alleged participation in a fraudulent scheme by a network of senior care providers. The case was brought under the False Claims Act and alleged, among other things, that the defendants conspired to submit Medicare claims for services that Medicaid already had covered. Selb reached a settlement with the government in 2004.

23.    After the alleged Medicare scam unraveled, Selb entered the tax resolution industry. He performed tax resolution services as a contractor for Nationwide for a number of years until March 2018, when he was discharged for: fabricating a bankruptcy in response to an IRS levy; stealing from Nationwide; and advising a client to engage in tax fraud and evasion.

**B.    Together with Bennett, Plourde, and a Fugitive from South Africa, Selb Creates ATS Using Nationwide's Proprietary Information and Is Sued Over It.**

24.    In 2016 and 2017, while he was still at Nationwide, Selb made comments to Matthew Parker, who was then a Nationwide employee, about defecting from Nationwide to create a competing business.  Selb said he was planning to recruit Mr. Parker and others whom Selb considered to be Nationwide's top talent, including Graupner, Bennett, and Neyla Ramirez.  Not only that:  Selb told Parker he was planning to mimic Nationwide's business model and use Nationwide's proprietary information for his new venture.

25.    After leaving Nationwide, Selb did exactly that.  He started ATS with two former employees of Nationwide—Bennett and Plourde—and a disgraced attorney and fugitive from South Africa, Andrew Rapport, who allegedly stole more than $12 million from his law firm's accounts.  ATS began competing with Nationwide in mid-2018 using Nationwide's customer information and other proprietary information.  Selb and his new business partners also hired at least twenty recent Nationwide employees.

26.    In November 2018, Nationwide sued Selb, Bennett, and ATS in state court, alleging primarily that (a) their use of NTE's proprietary information to poach Nationwide's then-existing customers violated Selb's and Bennett's severance agreements with NTE and constituted tortious interference with contract, and (b) they misrepresented "the nature, extent and success rate of ATS' services" and other facts in violation of California's Business and Professions Code.

27.    That case settled in October 2019.  But the settlement has only emboldened Selb, Bennett, and ATS, who are now actively engaged in a conspiracy with Plourde, Graupner, Barnes, GATL, LTD, and TDG involving fraud, extortion, and other unscrupulous acts designed to harm Nationwide and its customers and prospects.

LEVINSON ARSHONSKY & KURTZ, LLP

SECOND AMENDED COMPLAINT                                    Case No. 2:20-cv-10090-CAS-MAA

**C.** **Selb, Plourde, and Bennett Devise a Plan to Sabotage Nationwide's Relationships with Its Customers.**

28.     On information and belief, Selb has convinced Mr. Rob Boyles, the tax lien expert at U.S. Mailing House—Nationwide's mailing vendor—to give Selb exactly the same lists of prospective clients that Nationwide uses.

29.     According to former ATS employee Michael "Mickey" Gray, Selb, Plourde, and Bennett devised a scheme to steal Nationwide's customers that requires more support from U.S. Mailing House:  ATS mails solicitations to the same people Nationwide solicits between four and six weeks after Nationwide does so.  The purpose of staggering the letters in this way is to interfere with as many of Nationwide's contractual relationships as possible, as it typically takes two to three weeks for Nationwide to form a contractual relationship with the recipient of a mailing.

30.     The timing of ATS's mailings is revealing, but, as discussed below, it is the substance of the letters that is most disturbing.

**D.** **Defendants Acquire Nationwide's Customers through Fraud and Extortion.**

31.     Defendants are engaged in a campaign to steal Nationwide's customers—and their money—through a scam that begins with mailing fraudulent and extortionate letters.

   *1.     ATS Sends Letters to Nationwide's Customers and Prospects Impersonating the Government and Lying About Imminent Enforcement Actions.*

32.     ATS has sent—and continues to send—thousands of letters to Nationwide's customers and prospects nationwide that Selb, Bennett, and Plourde have crafted to deceive the recipients.

33.     Unlike Nationwide's mailings, the Company RICO Conspirators' advertisements are designed to mislead consumers into believing that they are receiving official notices from the government:

   a.     The letters bear phony government seals and purport to originate from non-existent departments of government agencies—such as

LEVINSON ARSHONSKY & KURTZ, LLP

the "Bureau of Tax Enforcement For Cook County," the "Tax Processing Unit, Bucks County," and the "Benefits Suspension Unit, Madison County".

b.    The letters purport to be legal documents. Many have prominent, deceptive titles like "NOTICE OF INTENT TO LEVY SOCIAL SECURITY BENEFITS" and "Distraint Warrant". Some of the letters expressly self-identify as legal process—stating, for example, "[t]his warrant serves the same function as a court judgment." There are even letters with captions at the top.

c.    The letters have signature blocks with fake government titles, such as "Levy and Warrant Officer" and "Compliance Authority". Many notices are signed with the vulgar pseudonym "Richard Herts," who purportedly serves as, among other things, a "Resolution Officer" in Baltimore and a "Levy and Warrant Officer" in New Jersey.

34.    Before ATS releases batches of mailings, Selb, Plourde, and others at ATS and GATL review them to maximize the likelihood that consumers will be misled into believing that the correspondence is from the government. According to Mr. Gray, when arrays of draft letters are presented to Plourde and Selb, they consistently choose the most coercive drafts for circulation.

35.    The Attorney General of Idaho—one of the many State AGs to issue public warnings about ATS's letters, (*see* Fig. 3, *infra*)—commented that "[a]ll scams pose a threat to those they target, . . . [b]ut this one is particularly concerning because of how official the mailing looks."

36.    The substance of ATS's fake government notices are designed to create panic and fear: they falsely state that enforcement actions against the recipients are imminent. The mailings typically threaten that if the debtor does not call the toll-free number by a certain deadline (as few as four days hence), the government will press

LEVINSON ARSHONSKY & KURTZ, LLP

1   criminal charges, suspend social security benefits, seize property, offset federal tax
2   refunds, garnish wages, or take other enforcement measures.  For the many recipients
3   of the letters who are already Nationwide customers, the false message being conveyed
4   is not just that crisis is imminent, but also that Nationwide has failed to do its job.

5        37.   ATS mails out phony "Distraint Warrants," for example, that threaten
6   property seizure if the recipient does not immediately call a toll-free number:

**Fig. 2:  Fake Distraint Warrant Sent by ATS**



38.   These supposed Distraint Warrants have been the subject of several
consumer fraud alerts. (*See* Fig. 3, *infra*.)   The Bucks County, Pennsylvania
Department of Consumer Protection, for example, recently warned consumers about

LEVINSON ARSHONSKY & KURTZ, LLP

these supposed "Distraint Warrants," which are designed to "scare residents" and lead them to believe they are receiving "legitimate communication[s]," when in fact they are receiving "fraudulet notice[s] from a fictitious agency."

39.    As remarked Michigan's Department of Treasury, "taxpayers with past-due tax debts should be aware of an aggressive scam that's making the rounds through the U.S. Postal Service . . . ."

40.    Defendants regularly prey on elderly consumers using the threat of suspending social security benefits—an action the IRS never takes.    Indeed, Defendants target debtors of all types, even churches and hospitals with tax debts. The greatest numbers of victims are in Florida, California, and New York, but Defendants perpetrate their fraud in Georgia, Massachusetts, North Carolina, Washington, Wisconsin, and numerous other states as well.

41.    Several consumers targeted by Defendants have shared the letters with media and law enforcement agencies, prompting a flood of consumer alerts:

**Fig. 3:  Consumer Alerts About ATS's Letters[1]**

| DATE | SOURCE | EXCERPTS |
| --- | --- | --- |
| 11/4/19 | *Larimer treasurer warns of tax lien scam* (Loveland Reporter-Herald) | "The notice, which has been sent in the mail, claims that a tax lien has been placed on the resident's property for non-payment of taxes and urges the resident to call (800) 279-0231 to avoid enforcement through garnished wages, seized property or seized tax returns. The letter claims to be from the 'Tax Processing Unit in Larimer County, Public Judgment of Records.' That |

[1] All emphasis in this chart is added.

2961-004/1121122

SECOND AMENDED COMPLAINT

Case No. 2:20-cv-10090-CAS-MAA

LEVINSON ARSHONSKY & KURTZ, LLP

LEVINSON ARSHONSKY & KURTZ, LLP

| DATE | SOURCE | EXCERPTS |
|---|---|---|
| | | entity does not exist, Josey said." |
| 12/31/19 | *Idaho Tax Commission: Watch out for this scam!* (Idaho News 6) | "The Idaho State Tax Commission is alerting Idaho taxpayers to a recurring tax scam. The alert comes after an individual with a tax debt recently received a demand for payment of Idaho taxes in the mail."<br><br>"The mailing claims to be from the State of Idaho's 'Tax Processing Unit Internal Processing Service' in Oregon's Malheur County. But no such unit exists. The ***fraudulent letter*** threatens to seize the individual's property if payment arrangements aren't made quickly." |
| 1/3/20 | *Treasury: Scammers Using Fake Letters in Collections Scam* (Michigan.gov) | "The piece of correspondence appears credible to the taxpayer because it uses specific personal facts about their real outstanding tax debt that's pulled directly from publicly available information. The scammer's letter attempts to lure the taxpayer into a situation where they could make a payment to a criminal." |
| 1/4/20 | *Scam relies on fake letters about state tax debt, officials warn* (mLIVE.com) | "In the scheme, taxpayers receive what appears to be a government-looking letter about an overdue tax bill, asking individuals to immediately contact a toll-free number to resolve a state tax debt. The letter aggressively |

LEVINSON ARSHONSKY & KURTZ, LLP

| DATE | SOURCE | EXCERPTS |
|---|---|---|
| | | threatens to seize a taxpayer's assets—including property and Social Security benefits—if the state tax debt is not settled." |
| 1/6/20 | *Treasury: Scammers Using Fake Letters in Collections Scam* (The Daily Mining Gazette) | "Michigan taxpayers with past-due tax debts should be aware of an ***aggressive scam that's making the rounds through the U.S. Postal Service***, according to the Michigan Department of Treasury . . . ." |
| 2/8/20 | *Davis County officials: Don't fall for tax scam* (Gephardt Daily) | "Officials in Davis County are alerting everyone to a ***tax scam*** that is currently going on in the area." "'If you receive taxes due/lien notices, always check with the respective government authorities PRIOR to making ANY payments and/or sharing financial account(s) details,' the Davis County Sheriff's Office posted on Facebook." |
| 3/12/20 | *Mail scam targeting Lexington County residents threatens wage garnishment, property seizure* (WIS News 10) | "The scam tells its recipients that they must pay overdue debts on their property to the Federal Tax Authority or face punishments such as garnishment of the recipient's bank account and wages." "It is made to look like the letter came from the Lexington County Public Judgement Records division, which does not exist." |
| 3/8/20 | *Consumer Corner:  How To Avoid The Bucks County Distraint Warrant Scam* (Bucks | "Letters . . . have been sent through the U.S. Postal Service in official looking envelopes |

2961-004/1121122

SECOND AMENDED COMPLAINT                                    Case No. 2:20-cv-10090-CAS-MAA

LEVINSON ARSHONSKY & KURTZ, LLP

| DATE | SOURCE | EXCERPTS |
|------|--------|----------|
| | County Department of Consumer Protection) | claiming to be from the 'Benefits Suspension Unit, Bucks County, Public Judgment Records'.  The envelope attempts to scare residents to respond by stating 'Immediate Action Required'.

"There is a bold heading claiming the notice is a 'Distraint Warrant', which refers to a legal term related to the IRS power to levy and distrain to collect unpaid taxes."

"There's a toll free number listed on the letter, which may lead some consumers to believe that this is a legitimate communication. ***This is a fraudulent notice from a fictitious agency and residents should not call the number if they receive this scam letter***." |
| **6/26/20** | *Have you gotten a 'Distraint Warrant' letter? Erie County warns of new scam (2 WGRZ On Your Side)* | "Erie County says that these ***scam letters*** often say they're from the 'Tax Processing Unit.' But Erie County doesn't have such a thing." |
| **7/31/20** | *Clay County Sheriff's Office warns public of two scams (Valley News Live)* | "The Clay County Sheriff's Office has been informed of two scams that are going around using Clay County's name."

"The first is a mailer that comes from the 'Benefits Suspension Unit, Clay County, Public Judgement Records.' |

14

| DATE | SOURCE | EXCERPTS |
|---|---|---|
|  |  | This indicates that you have a 'Distraint Warrant' and says you must call a 1-800 number by a certain date. ***This is a tax SCAM***, please do not respond to it." |
| 9/15/20 | *Scam Alert: Buncombe Tax Office Warns of Distraint Warrant Scam Letter* (County Center—Buncombe County, North Carolina) | "The Buncombe County Tax Department would like to make our community aware of an ongoing scam targeting area residents."<br><br>"There is a bold heading claiming the notice is a Distraint Warrant and a toll free number listed on the letter, which may lead some consumers to believe this is a legitimate communication. ***This is a fraudulent notice from a fictitious agency and residents should not call the number***." |

LEVINSON ARSHONSKY & KURTZ, LLP

42.     Consumers also have highlighted ATS's fraudulent mailings on Yelp:

**Fig. 4:  Recent ATS Yelp Reviews[3]**



43.     On information and belief, ATS's deceptive mailings also have prompted investigations by government authorities.

> 2.     *Graupner, Barnes, and Their Companies Join the Fraudulent Conspiracy.*

44.     ATS's fear-inspiring mailings yield a high volume of inbound calls.  On information and belief, the ATS RICO Defendants have enlisted other competitors of Nationwide—including Graupner, Barnes, TDG, and LTD—to upsize the fraudulent scheme.  On information and belief, Graupner, Barnes, TDG, and LTD agreed with the other Defendants that they would promote Defendants' fraudulent endeavor by handling the overflow of inbound calls to ATS and GATL.  On information and belief, a portion of calls to ATS and GATL are automatically re-routed to Graupner, Barnes, TDG, and LTD, which have a fee-sharing arrangement with ATS and GATL.

---

[3] (*See* https://www.yelp.com/biz/american-tax-solutions-chicago (last visited Dec. 21, 2020).)

LEVINSON ARSHONSKY & KURTZ, LLP

45.    On information and belief, when Nationwide's customers and other consumers call in, Graupner, Barnes, and others at TDG and LTD follow the same playbook and tell the same lies as Selb, Bennett, Plourde, and others at ATS and GATL. Those lies are described below.

46.    By fielding calls from consumers, reiterating the lies in ATS's letters, and taking customers from Nationwide, Defendants Graupner, Barnes, TDG, and LTD not only further the agreed-upon objectives of the conspiracy—including to harm Nationwide's business—but also adopt the fraudulent and extortionate letters as their own.

47.    Defendants have used a large number of toll-free phone numbers as part of the RICO scheme—not just to diffuse risk, but also because a number of the phone numbers created by Selb and his co-conspirators have been shut down by so-called RespOrgs—self-regulatory organizations that control the registration of toll-free numbers—due to complaints about Defendants' deceptive practices.

### 3.    *Defendants Continue Their Fraud Over the Phone.*

48.    For those customers who are baited by ATS's deceptive mailings, the lies continue over the phone.

49.    On information and belief, Selb, Bennett, Plourde, Graupner, Barnes, and others acting at their direction follow the same script when they target Nationwide's customers:  they trick Nationwide's customers into believing that they are about to go to jail, lose their social security benefits, lose their homes, or be subject to some other imminent enforcement action.   In reality, the customers face no such imminent enforcement:   the IRS does not send delinquent taxpayers to jail; it rarely seizes homes—and never primary residences; and it does not suspend social security payments (it typically garnishes 15% of social security payments).

50.    On information and belief, once one of the Defendants convinces Nationwide's customer that crisis is imminent, the customer is told that Nationwide is

LEVINSON ARSHONSKY & KURTZ, LLP

LEVINSON ARSHONSKY & KURTZ, LLP

1   to blame—another lie.  Whoever fields the call—and only discovery will reveal who

2   has fielded which calls from Nationwide's customers—knows to falsely state that the

3   customer is about to be in serious trouble (which is not the case) because Nationwide

4   has not performed the tax resolution services it was hired to perform.

5       51.     Many Nationwide customers, including but not limited to customers in

6   Florida, California, New York, Georgia, Massachusetts, North Carolina, Washington,

7   and Wisconsin, have relied on Defendants' lies over the phone and fired Nationwide

8   in favor of hiring one of the Company RICO Conspirators.

9       52.     California resident Ricardo Alvarez is one of the many taxpayers who

10   have been duped by Defendants.  In or around August 2020, when Nationwide was in

11   the midst of addressing Mr. Alvarez's tax issues, he received a phony government

12   notice from ATS about his tax debt.  When he called the toll free number in the letter,

13   he reached ATS's Wesley Turner, who falsely stated that Nationwide did not have the

14   situation under control.  That was not the only lie he told on that call:  he has no college

15   degree, yet held himself out as having gone to law school.  He also falsely claimed to

16   be an "enrolled agent."  An enrolled agent is someone who has been approved by the

17   IRS to represent taxpayers before the IRS.  Enrolled agents must pass an exam, take

18   continuing education, and "demonstrate[ ] special competence in tax matters."[7]  Mr.

19   Turner (i) violated the rules of the IRS's Office of Professional Responsibility by

20   holding himself out as an enrolled agent to a consumer, and, on information and belief,

21   (ii) has committed crimes by holding himself out as an enrolled agent in IRS

22   submissions.[8]  On a separate call around the same time, Mr. Alvarez spoke to Mr.

23   Turner's assistant, who falsely stated that Mr. Turner is an attorney.  Lower-level ATS

24   employees thus know to perpetuate their bosses' lies.

---

25   [7] (*See* IRS Office of Professional Responsibility, Overview, at https://www.irs.gov/irm/part1/irm_01-

26   001-020 (last visited Oct. 21, 2020).)

27   [8] (*See* accountingTODAY, *Man Indicted for Posing as Enrolled Agent* (Mar. 15, 2009), at

28   https://www.accountingtoday.com/news/man-indicted-for-posing-as-enrolled-agent (discussing
     indictment of another tax professional holding himself out as an enrolled agent).)

53.     Washington resident Roger Dearman is another taxpayer who has suffered at the hands of Defendants.  In June 2020, while Nationwide was addressing his tax situation, he received one of ATS's phony government notices and was deceived into firing Nationwide and hiring ATS.  Mr. Dearman paid ATS $30,000—using funds from a loan that ATS arranged for him.  When ATS did not provide the services Mr. Dearman was promised, he demanded a full refund, but was persuaded to accept a $20,000 refund and sign a release.

54.     In addition to divvying up inbound calls from Nationwide's customers, Defendants collaborate on turning customers of Nationwide against it.  For example, one of Nationwide's recently-lost customers was initially targeted by Selb, then referred by Barnes to an attorney at LTD.  The LTD attorney coached the customer on his separation from Nationwide and sent emails to Nationwide on behalf of the customer making huge demands.

> **4.     *Defendants Induce Customers to Pay Duplicative Fees—and, in Some Cases, Pay for Services That Are Not Rendered.***

55.     Nationwide customers who rely on Defendants' deceptive mailings and statements over the phone do so to their detriment, for once they are deceived into switching over to ATS or one of its co-conspirators, they must pay significant, redundant fees.

56.     Nationwide, ATS, GATL, TDG, and LTD all require a new customer to make an upfront, non-refundable payment of roughly $500 to cover an initial investigation of the tax issues.  Indeed, that is an industry-standard practice employed by, among others, Optima Tax Relief, the largest and most well-known tax resolution company in the U.S.  By the time Defendants poach a Nationwide customer—which, by design, typically occurs four-to-six weeks into the relationship—Nationwide has already collected the upfront fee and conducted its initial investigation.

57.     When one of the Defendants succeeds in scaring the customer into terminating its relationship with Nationwide and signing a new services agreement

LEVINSON ARSHONSKY & KURTZ, LLP

19

with one of the Company RICO Conspirators, the customer must pay the upfront fee a second time for the same services.

58.   On information and belief, there are even some cases where the customer pays the upfront fee a second time, yet ATS (or its co-conspirator) never performs the services it promises to perform—i.e., calling the IRS as part of an initial assessment of the customer's tax situation.   Indeed, that is what happened to Mr. Alvarez after he hired ATS.

59.   Defendants' deception thus comes at great cost not just to Nationwide, but also to consumers.   That is why the balance of the equities and the public interest decidedly favor the injunctive relief sought by this action.   Eliminating a fear-inspiring, fraudulent scheme would promote the public good.   And Defendants can hardly claim that they would suffer any undue hardship by being ordered to compete without relying on lies and fearmongering.

**E.   Defendants' RICO Scheme Causes Significant Commercial Injury to Nationwide.**

60.   On top of harming consumers nationwide, Defendants' unscupulous acts have caused and continue to cause significant financial, reputational, and other injury to Nationwide's business.

61.   Many of the thousands of Nationwide customers who are contacted by Selb and his co-conspirators reach out to Nationwide in a panic—especially elderly clients who have been tricked into believing they are about to lose their social security benefits.   Nationwide has expended substantial resources—including hundreds of hours worked—working to persuade its own customers to stay.   In most cases, Nationwide must waste the time of attorneys or enrolled agents to call the IRS jointly with the client in an effort to demonstrate that the Defendants' letter was not a government notice.   On top of having a great opportunity cost, this diversion of resources is impeding Nationwide's operations.

LEVINSON ARSHONSKY & KURTZ, LLP

1    62.    In many cases, Nationwide customers have been so shaken by
2    Defendants' lies that Nationwide's relationships with them cannot be saved.
3    Nationwide has lost hundreds, if not thousands, of customers and significant market
4    share in California, New York, Florida, Georgia, North Carolina, Massachusetts,
5    Washington, Wisconsin, and other states as a direct result of Defendants' predatory,
6    fraudulent, and unfair acts.    As but a few examples, Defendants torpedoed
7    Nationwide's contractual relationships with (i) Palm Desert, California resident
8    Henrietta Ruiz in or around August 2020, (ii) Tampa, Florida resident Ada Terrero in
9    or around January 2020, (iii) Albany, Georgia resident Alfreda Leggett in or around
10    May 2020, (iv) Salisbury, North Carolina resident Jeffrey Kee in or around December
11    2019, and (v) Boston, Massachusetts resident Edmund Davis in or around April 2020.
12    On information and belief, the individual Defendants (or others acting at their
13    direction) followed the script described above in persuading those customers to
14    terminate their relationships with Nationwide.    Only discovery will reveal which
15    representatives of ATS, GATL, TDG, and LTD spoke to which customers.

16    63.    Even when Nationwide is able to save a customer relationship,
17    Defendants' stunt still has strained the relationship.

18    64.    On top of misappropriating existing Nationwide customers, Defendants
19    misappropriate prospective customers.    Defendants gains access to Nationwide's
20    prospective clients by getting those lists from U.S. Mailing House, then use fear and
21    deception to take a large share of those prospects from Nationwide.    To be sure,
22    Defendants are not taking remote, theoretical prospects from Nationwide:  the lists of
23    potential customers are target-rich because of Nationwide's proprietary method for
24    searching public records.  A large proportion of the prospects Defendants deceive into
25    becoming their customers otherwise would hire Nationwide.

26    65.    Taking customers and prospects away from Nationwide and harming its
27    business is exactly what Selb, Bennett, Plourde, Graupner, and Barnes agreed they
28    would strive to accomplish by Defendants' misdeeds.  Selb perpetuates Defendants'

LEVINSON ARSHONSKY & KURTZ, LLP

scheme to interfere with Nationwide's contracts with its customers by awarding a special bonus to anyone who succeeds in appropriating a customer from Nationwide.

66.   The injuries Nationwide has sustained and continues to sustain are by no means merely financial.  After ATS or one of its RICO co-conspirators acquires a Nationwide customer, Selb works to coopt the customer to defame Nationwide.  He has conversations with the customer in which he urges the customer to file complaints against Nationwide with the Better Business Bureau and the Attorney General and on customer review platforms based on the lies the customer has been told about Nationwide.  On information and belief, Selb has trained Plourde, Bennett, Graupner, and Barnes to follow a similar script with new customers they appropriate from Nationwide.   Defendants' efforts are tarnishing Nationwide's reputation and irreparably harming its goodwill.  There is no adequate remedy at law for these non-monetary injuries.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**
**Violation of RICO (Racketeer Influenced and Corrupt Organizations Act),**
**18 U.S.C. § 1962 *et seq*.**
**(Against All Defendants)**

67.   Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

68.   Under 18 U.S.C. § 1962(a), it is illegal "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

69.   Under 18 U.S.C. § 1962(c), it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate

LEVINSON ARSHONSKY & KURTZ, LLP

or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."

70.     Under 18 U.S.C. § 1962(d), it is unlawful to conspire to violate 18 U.S.C. § 1962(a) or 18 U.S.C. § 1962(c).

71.     Each of Selb, Bennett, Plourde, ATS, GATL, Graupner, TDG, Barnes, and LTD is a "person" under 18 U.S.C. § 1961(3) because each is capable of holding a legal or beneficial interest in property.

72.     At all times relevant to Plaintiff's RICO claims, Selb, Plourde, and Bennett have been employed by and/or associated with ATS and GATL, and Graupner has been employed by and/or associated with TDG.  Barnes previously was employed by and/or associated with LTD.

73.     At all times relevant to Plaintiff's RICO claims, each of ATS, GATL, TDG, and LTD has been an "enterprise" under 18 U.S.C. § 1961(4) because each is a corporation.   Separately, Defendants have been operating an associated-in-fact enterprise:  they created a cross-firm arrangement to pursue the common purpose of appropriating and exploiting Nationwide's customers, including by impersonating the government.  Under the structure Defendants created, responsibility for reaching out to consumers is divided between Defendants, and, on information and belief, the ATS Defendants have fee-sharing arrangements with the other Defendants.

74.     Every Defendant engages in interstate commerce by selling tax debt resolution services to consumers around the country.

75.     Defendants have engaged in hundreds, if not thousands, of acts of "racketeering activity"—and certainly more than the two acts required for a "pattern" under 18 U.S.C. § 1951(5)—as part of an ongoing scheme devised by Selb:

a.     **Mail and Wire Fraud.**  Each Defendant repeatedly has committed mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 by using the mail and wire facilities as part of a scheme to obtain money through false or fraudulent pretenses.   In their

LEVINSON ARSHONSKY & KURTZ, LLP

mailings and phone calls to unsuspecting consumers with tax debt, Selb, Plourde, Bennett, GATL, ATS, Graupner, TDG, Barnes, and LTD (i) impersonate government officials, (ii) lie about non-existent imminent government enforcement actions, including suspension of social security benefits, garnishment of wages, property seizures—and even indictments, and (iii) lie about their competitor, Nationwide.  Some ATS and GATL personnel also misrepresent their credentials.  Such fraudulent statements are designed to induce—and many times have successfully induced—consumers needlessly to pay the Company RICO Conspirators redundant fees that had already been paid to Nationwide, including, in some cases, fees for services that are never rendered.

b. **Extortion.**  Each Defendant also has engaged in many acts of extortion under 18 U.S.C. § 1951 by obtaining property from victims, with their consent, through the wrongful use of fear.  Defendants have extracted countless fees from Nationwide's customers and prospects by pretending to be government officials and preying on their fear of jail time, losing their property, losing government benefits, having their wages garnished, or otherwise being the subject of government enforcement actions.

76.  Selb—who has personally orchestrated the overall scheme, participated in crafting the fraudulent and extortionate mailings, made many of the fraudulent and extortionate phone calls, and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while "employed by or associated with" ATS and GATL and, alternatively, the associated-in-fact enterprise discussed above.

77.  Bennett—who has participated in crafting and sending the fraudulent and extortionate mailings, made many of the fraudulent and extortionate phone calls, and

LEVINSON ARSHONSKY & KURTZ, LLP

profited from the scheme—likewise has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while employed by or associated with ATS and GATL and, alternatively, the associated-in-fact enterprise discussed above.

78. Plourde—who has participated in crafting and sending the fraudulent and extortionate mailings, made many of the fraudulent and extortionate phone calls, and profited from the scheme—likewise has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while employed by or associated with ATS and GATL and, alternatively, the associated-in-fact enterprise discussed above.

79. Graupner—who has made many of the fraudulent and extortionate phone calls and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while employed by or associated with TDG and, alternatively, the associated-in-fact enterprise discussed above.

80. Barnes—who has made many of the fraudulent and extortionate phone calls and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity during his employment by and association with LTD and, alternatively, as part of the associated-in-fact enterprise discussed above.

81. On information and belief, ATS, GATL, TDG, and LTD each combines the revenue derived from the fraudulent and extortionate acts alleged herein with other revenue and uses a substantial portion of the combined revenue to cover employee compensation—including but not limited to the bonuses Selb awards for appropriating Nationwide customers—and other operating expenses.

82. ATS violated 18 U.S.C. § 1962(a) by participating in the racketeering activities  and using income from those activities to operate the enterprise.

83.   GATL violated 18 U.S.C. § 1962(a) by participating in the racketeering activities and using income from those activities to operate the enterprise.

84.   TDG violated 18 U.S.C. § 1962(a) by participating in the racketeering activities and using income from those activities to operate the enterprise.

85.   LTD violated 18 U.S.C. § 1962(a) by participating in the racketeering activities and using income from those activities to operate the enterprise.

86.   All Defendants have worked in collaboration and by agreement to perpetrate the substantive RICO violations alleged herein, and thus all violated 18 U.S.C. § 1962(d).

87.   Defendants' RICO violations have proximately caused—and continue to proximately cause—injury to Nationwide because those violations have directly reduced Nationwide's revenues and profits (in addition to harming Nationwide's reputation, goodwill, and market share).

## COUNT II
### Violation of the Lanham Act,
### 15 U.S.C. § 1125(a)
### (Against All Defendants)

88.   Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

89.   The Lanham Act prohibits any person, including a business entity, from using in commerce any false or misleading representation of fact that is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of such person with another person.  Any person who believes that he, she, or it is or is likely to be damaged by such act has a civil claim against the person violating the statute.

90.   Defendants have violated the Lanham Act by pretending to be government officials in mailings to consumers, lying about imminent government enforcement

LEVINSON ARSHONSKY & KURTZ, LLP

1     actions in mailings to consumers and during phone calls with consumers, and making

2     false and misleading statements about Nationwide to consumers.

3           91.    Nationwide has already suffered and is likely to keep suffering financial

4     and other harm as a direct result of Defendants' deceptive conduct.

### COUNT III
**Unfair and Deceptive Trade Practices**
**(Against All Defendants)**

          92.    Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

          93.    Defendants have violated and continue to violate numerous states' unfair and deceptive trade practices ("UDTP") statutes by: mailing fraudulent and extortionate letters to consumers; defrauding and extorting consumers over the phone; inducing them to pay unnecessary fees; collecting fees for services they do not provide; and engaging in the other predatory and illegal acts described here.

          94.    Consumers and Plaintiff alike are directly and foreseeably harmed by Defendants' unfair and deceptive trade practices.

          95.    By the acts described above, Defendants have violated:

        a.    California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., which broadly prohibits any "unlawful, unfair or fraudulent business act or practice";

        b.    Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq*., which prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce";

        c.    Section 349 of New York's General Business Law, which prohibits deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations and the knowing

LEVINSON ARSHONSKY & KURTZ, LLP

LEVINSON ARSHONSKY & KURTZ, LLP

concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission, in connection with the sale or advertisement of goods;

d.  Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. § 10-1-370, which authorizes injunctive relief in favor of a person "likely to be damaged by a deceptive trade practice of another";

e.  Section 100.18 of Wisconsin's general statutes, which prohibits any corporation from sending a letter to the public that "contains any assertion, representation or statement of fact which is untrue, deceptive, or misleading" for the purpose of selling a service;

f.  Massachussetts's Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, §§ 1–11, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce";

g.  Section 75-1.1 of the General Statutes of North Carolina, which prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce"; and

h.  the UDTP statutes of other states where Defendants are targeting Nationwide's customers.

## COUNT IV
### Tortious Interference with Contract
### (Against All Defendants)

96.  Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

97.  Selb uses Nationwide's lists of customers and potential customers for the express purpose of disrupting Plaintiff's contractual relationships with its clients—Nationwide's main source of revenue.

98.     Defendants intentionally time their fraudulent and extortionate mailings based on the timing of Plaintiff's own mailings so that Defendants can disrupt Plaintiff's contractual relationships with clients to greatest extent possible.

99.     Once Defendants contact Plaintiff's customers over the phone and learn about their contracts with Plaintiff, Defendants maliciously make a series of fraudulent misrepresentations—including lies about Nationwide and misrepresentations about government enforcement actions—and urge Nationwide's customers to terminate those contracts.

100.    In direct reliance on Defendants' deceptive conduct, many of Nationwide's customers, such as Messrs. Alvarez and Dearman, have terminated their relationships with Nationwide.

101.    Defendants' misappropriation of Nationwide's customers has directly and proximately caused Nationwide to lose profits and suffer harm to its reputation and goodwill.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a Judgment:

a.  enjoining Defendants from (i) holding themselves out as government agents and lying about imminent enforcement efforts; and (ii) making misrepresentations about Nationwide to its customers.

b.  awarding compensatory damages in an amount to be determined at trial;

c.  awarding treble damages under RICO;

d.  awarding punitive damages;

e.  awarding costs and attorneys' fees under, among other laws, RICO, the Lanham Act, Florida's Deceptive and Unfair Trade Practices Act, and Section 349 of New York's General Business Law; and

f.  granting any other relief the Court deems appropriate.

Dated: February 16, 2021          LEVINSON ARSHONSKY & KURTZ, LLP

                                  _/s/ Anne C. Manalili_
                                  Richard I. Arshonsky, State Bar No. 155624
                                  Anne C. Manalili, State Bar No. 193483
                                  15303 Ventura Boulevard, Ste. 1650
                                  Sherman Oaks, CA 91403
                                  rarshonsky@laklawyers.com
                                  amanalili@laklawyers.com

                                  Douglas Gansler (*pro hac vice*)
                                  CADWALADER, WICKERSHAM & TAFT LLP
                                  700 Sixth Street, NW
                                  Washington, DC 20001
                                  douglas.gansler@cwt.com

                                  Jonathan M. Watkins (*pro hac vice*)
                                  Aaron C. Lang (*pro hac vice*)
                                  CADWALADER, WICKERSHAM & TAFT LLP
                                  227 West Trade Street
                                  Charlotte, NC 28202
                                  jonathan.watkins@cwt.com
                                  aaron.lang@cwt.com

                                  *Attorneys for Plaintiff Nationwide Tax Experts, Inc.*

1

## DEMAND FOR JURY TRIAL

2          Under Rule 38(b) of the Federal Rules of Civil Procedure and Local Civil Rule

3    38-1, Plaintiff demands a trial by jury of all issues so triable that are raised here or

4    which hereinafter may be raised in this action.

5

6    Dated: February 16, 2021          LEVINSON ARSHONSKY & KURTZ, LLP

7                                         */s/ Anne C. Manalili*
                                      Richard I. Arshonsky, State Bar No. 155624
8                                     Anne C. Manalili, State Bar No. 193483
                                      15303 Ventura Boulevard, Ste. 1650
9                                     Sherman Oaks, CA 91403
                                      rarshonsky@laklawyers.com
10                                    amanalili@laklawyers.com

11                                    Douglas Gansler (*pro hac vice*)
                                      CADWALADER, WICKERSHAM & TAFT LLP
12                                    700 Sixth Street, NW
                                      Washington, DC 20001
13                                    douglas.gansler@cwt.com

14                                    Jonathan M. Watkins (*pro hac vice*)
15                                    Aaron C. Lang (*pro hac vice*)
                                      CADWALADER, WICKERSHAM & TAFT LLP
16                                    227 West Trade Street
                                      Charlotte, NC 28202
17                                    jonathan.watkins@cwt.com
                                      aaron.lang@cwt.com
18
19                                    *Attorneys for Plaintiff Nationwide Tax Experts, Inc.*

20

21

22

23

24

25

26

27

28

**LEVINSON ARSHONSKY & KURTZ, LLP**

# CERTIFICATE OF SERVICE

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Los Angeles, State of California.  My business address is 15303 Ventura Blvd., Suite 1650, Sherman Oaks, CA 91403.

☒  **(BY CM/ECF SYSTEM)**  On the date below, I caused to be electronically filed the following document(s) described as: **SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT, THE LANHAM ACT, AND VARIOUS STATE LAWS JURY TRIAL DEMANDED**

with the Clerk of the United States District Court of Central District of California, using the *CM/ECF* System. The Court's *CM/ECF* System will send an e-mail notification of the foregoing filing to the following parties (or on the attached service list) and counsel of record who are registered with the Court's *CM/ECF* System:

- **Richard I Arshonsky**
  rarshonsky@laklawyers.com,sgrindstaff@laklawyers.com
- **Douglas Gansler**
  douglas.gansler@cwt.com
- **Aaron C. Lang**
  aaron.lang@cwt.com,nyecfnotice@cwt.com
- **Anne C Manalili**
  acmecf@laklawyers.com
- **Jonathan M. Watkins**
  jonathan.watkins@cwt.com,nyecfnotice@cwt.com
- **Michael E Williams**
  michaelwilliams@quinnemanuel.com,ecf-5be70640977b@ecf.pacerpro.com

☒  **(BY MAIL)**  On the date below, I placed the envelope for collection and mailing following our ordinary business practices containing the following documents(s) described as:  **SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT, THE LANHAM ACT, AND VARIOUS STATE LAWS JURY TRIAL DEMANDED**

I am readily familiar with firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid on the following (or on the attached service list):

Dondamonde Barnes                    Defendant
4405 Angelo Street
Riverside, CA 92507

569-041/1068674

☒  **(BY EMAIL)**  On the date below, I caused the following documents(s) described as:  **SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT, THE LANHAM ACT, AND VARIOUS STATE LAWS JURY TRIAL DEMANDED** to be sent to the persons at the electronic notification addresses listed below (or on the attached service list).  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful:

Greg L. Kirakosian, Esq. of KIRAKOSIAN LAW, APC  - greg@kirakosianlaw.com

Attorneys for Defendants Terrance Selb, Tyler Bennett, Geoff Plourde, American Tax Solutions, Inc., GetATaxLawyer.com, LLC, and Legal Tax

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 16, 2021 at Sherman Oaks, California.

Natalie M. Lessard

/s/ Natalie M. Lessard

*Signature*

**CERTIFICATE OF SERVICE**