UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL       'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|---|---|---|---|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Anne Manalili | Michael Williams |
| Jonathan Watkins | David Lake |

| Proceedings: | **REDACTED** - [UNDER SEAL] MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) BY DEFENDANTS TERRANCE SELB, TYLER BENNETT, GEOFF PLOURDE, AMERICAN TAX SOLUTIONS, INC., AND GETATAXLAWER.COM, LLC (Dkt. 69, filed on April 7, 2021) |
|---|---|

## I.  INTRODUCTION

On November 3, 2020, plaintiff Nationwide Tax Experts, Inc. f/k/a Tax Relief, Inc. d/b/a National Tax Experts ("Nationwide") filed suit in this Court against defendants Terrence Selb; Tyler Bennett; Geoff Plourde; American Tax Solutions, Inc. ("ATS"); GetATaxLawyer.com, LLC ("GATL") (together, "ATS defendants"); Ben Graupner; Ben Graupner, Inc. d/b/a Tax Debt Group ("TDG") (together, "Graupner defendants"); Dondamonde Barnes; and Legal Tax Defense, Inc. ("LTD"). Dkt. 1 ("Compl.") at 2. The operative second amended complaint alleges claims for: (1) violation of the Racketeer Influence and Corrupt Organization Act, 18 U.S.C. §§ 1962, *et seq.* ("RICO"), against all defendants (claim one); (2) violation of the Lanham Act, 15 U.S.C. § 1152(a), against all defendants (claim two); (3) violation of various states' unfair and deceptive trade practices acts, against all defendants (claim three); and (4) tortious interference with contract, against all defendants (claim four). Dkt. 58 ("SAC") ¶¶ 67–101.

ATS defendants filed the instant motion to dismiss on April 7, 2021. Dkt. 69 ("Mot."). They also filed a request for judicial notice. Dkt. 66-3 ("RJN").[1] On May 4,

---

[1] ATS defendants request that this Court take judicial notice of several filings in a Los Angeles County Superior Court case, a private settlement agreement entered into in

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

2021, Nationwide filed an opposition, dkt. 77 ("Opp."), and on May 19, 2021, ATS defendants replied, dkt. 85 ("Reply").

Graupner defendants do not join in ATS defendants' motion; however, the Court, in accord with Nationwide's stipulation, has extended the time in which Graupner defendants may respond to the SAC until 30 days after the Court's ruling on this motion, or the filing of a third amended complaint, whichever later occurs. Dkts. 72, 73. Furthermore, LTD has been dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Dkt. 63. Finally, although Barnes was served the summons and the first amended complaint on January 30, 2021, see dkt. 55, it appears he has not responded.

The Court held a hearing on June 7, 2021. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Parties

Nationwide describes itself as a tax assistance firm that negotiates settlements of its customers' tax debt with the IRS and state agencies, and helps customers enroll in tax relief programs. SAC ¶ 8.

ATS and GATL are also tax assistance firms. Id. ¶ 9. Nationwide alleges that ATS conducts business through GATL, and that both are managed by the same people, including Selb, Bennett and Plourde. Id. Selb is the founder of ATS and the President of GATL. Id. ¶ 10. Bennett is the Chief Operating Officer of both ATS and GATL. Id. ¶ 11. And

---

relation to that case, a posting on the Iowa Secretary of State's website, and a page on a company's website. See RJN. The Court **GRANTS** ATS defendants' request to take judicial notice of the filings in the Superior Court case. See Trigueros v. Adams, 658 F.3d 983, 987 (9th Cir. 2011) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system" (quotation omitted)). But, because ATS defendants, not Nationwide, seek to rely on the settlement agreement, the Court conditionally takes judicial notice of that agreement. Finally, because the Court's ruling does not depend on the website pages, it **DENIES** as moot the request as to those documents.

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|---|---|---|---|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

Plourde is a Vice President at ATS, and the Chief Financial Officer at GATL. Id. ¶ 12. Both Bennett and Plourde were formerly employees of Nationwide's. Id. ¶¶ 11, 12.

TDG, too, is a tax assistance firm. Id. ¶ 14. TDG was founded by Graupner, who, like Bennett and Plourde, is a former employee of Nationwide's. Id. ¶ 13.

Finally, LTD is a tax assistance firm. Id. ¶ 16. According to Nationwide, Barnes used to be employed by LTD, and continues to perform some marketing services for, and provide referrals to, LTD. Id. ¶ 15.

**B.     State Court Action**

On November 28, 2018, Nationwide (under its former name, Tax Relief, Inc.) brought suit against Selb, Bennett, ATS and one Christopher J. Baker, whose relationship to the other parties is undefined ("State Court defendants"), in Los Angeles County Superior Court, Tax Relief Inc. v. Terry Selb, et al., No. 18STCV06460 ("State Court Action"). RJN, Exh. A ("State Ct. Compl."). In that case, Nationwide alleged causes of action for: (1) breach of contract against Selb and Bennett; (2) intentional interference with contract against all defendants; and (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"), against all defendants.

Selb, as an independent contractor, at one point provided tax resolution services to Nationwide and its clients, until Nationwide allegedly discovered that Selb "had engaged in unlawful business practices while servicing [Nationwide] clients." Id. ¶¶ 10–11. Because Selb had had access to confidential and sensitive information about Nationwide's customers and business, when Nationwide terminated Selb's services, it entered into a written non-disclosure agreement with Selb ("Selb Agreement"). Id. ¶¶ 12–13. Bennett, who at one point provided services to Nationwide through Selb, was also terminated. Id. ¶ 14–15. Like Selb's, Bennett's severance agreement prohibited him from using or disclosing sensitive information about Nationwide ("Bennett Agreement"). Id. ¶ 15.

According to Nationwide, Selb and Bennett soon thereafter used and disclosed Nationwide's information in contravention of their non-disclosure agreements, including to ATS. Id. ¶¶ 17, 22. Nationwide further alleged that Bennett, Baker and ATS "intentionally disrupted and interfered with [Nationwide's] contractual relationship with Selb," and interfered with "[Nationwide's] relationships with actual and prospective [Nationwide] customers." Id. ¶ 28. As a result, "[Nationwide] customers stopped doing business with [Nationwide] and started doing business with ATS, and ATS took



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|---|---|---|---|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

[Nationwide's] prospective business with prospective customers, resulting in substantial monetary losses to [Nationwide] . . . ." Id. ¶ 30. Nationwide alleged identical claims with regard to the Bennett Agreement. Id. ¶¶ 34–38, 41–45.

Nationwide also alleged that the State Court defendants made several false or misleading representations to the public, including that ATS had engaged in tax resolution services for seven years, when in fact it had operated for at most one; that Baker, an attorney, was providing customers advice when in fact Selb, a disbarred attorney, was providing the advice; that ATS' employees had credentials they did not in fact have; and that ATS was more successful than it was. Id. ¶ 49. Nationwide finally alleged that "Defendants' wrongful conduct is ongoing and presents a threat and likelihood of continuing against Plaintiff, the public, consumers, and other businesses competing with ATS . . . ." Id. ¶ 52.

### C. Settlement of State Court Action

The State Court Action settled in October 2019, with no money exchanging hands. The parties executed a settlement agreement on October 25, 2019. See dkt. 70 ("Settlement Agreement").

The Settlement Agreement goes on to state that:

**REDACTED CIVIL MINUTES – GENERAL    'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

██████████████████████████████████████████████

On November 15, 2019, the Superior Court, at the parties' request, dismissed all causes of action against all parties, with prejudice. RJN, Exh. C at 1. Nothing in the record suggests the Superior Court approved the Settlement Agreement, or incorporated it into the dismissal.

### D.    Current Action

Nationwide commenced this suit on November 3, 2020. As noted above, the operative SAC names as defendants Selb, Bennett, Plourde, ATS, GATL, Graupner, TDG, Barnes and LTD. SAC at 1–2.

#### 1.    Dispute between Selb and Nationwide

Nationwide alleges that, upon severing ties with Nationwide, Selb founded ATS with Bennett and Plourde, and soon hired at least 20 recent Nationwide employees. SAC ¶ 25. ATS also allegedly used Nationwide's customer information and other proprietary information. Id. All of these alleged acts occurred before the filing of the State Court Action.

However, Nationwide now alleges that "the settlement [of the State Court Action] has only emboldened Selb, Bennett, and ATS, who are now actively engaged in a conspiracy with Plourde, Graupner, Barnes, GATL, LTD, and TDG involving fraud, extortion, and other unscrupulous acts designed to harm Nationwide and its customers and prospects." Id. ¶ 27.

#### 2.    Alleged Fraudulent and Extortionate Scheme

The crux of the alleged scheme is that ATS mails letters, designed to imitate official government correspondence, to taxpayers with outstanding tax liabilities. These letters threaten imminent enforcement action against the taxpayers unless they call a toll-free telephone number, which connects them to ATS, GATL or TDG. Defendants then sell the unwitting taxpayers tax relief services.

According to a former ATS employee, Michael Gray, "Selb, Plourde, and Bennett devised a scheme to steal Nationwide's customers . . . ." Id. ¶ 29. According to Gray,

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title    | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

"ATS mails solicitations to the same people Nationwide solicits between four and six weeks after Nationwide does so." Id.  The purpose of this tactic is "to interfere with as many of Nationwide's contractual relationships as possible." Id.  On information and belief, Nationwide alleges that ATS has access to Nationwide's mailing lists because Selb convinced the tax lien expert at Nationwide's mailing vendor, U.S. Mailing House, to provide Selb with Nationwide's list of prospective customers. Id. ¶ 28.  Nationwide alleges ATS has sent "thousands" of such mailings.  Id. ¶ 32.

Nationwide submitted several samples of letters, see Compl., Exh. A, certain versions of which have apparently been the subject of consumer alerts issued by various state officials across the country, SAC ¶¶ 38–39, 41.  Although Nationwide contends defendants mailed these letters to taxpayers, nothing on the face of the letters expressly tie them to any of defendants.  In any event, Nationwide alleges that the letters are designed to frighten and mislead consumers into believing the letters are official notices from the government.  Id. ¶ 33.  For instance, the letters bear false government seals and purport to originate from fictitious government offices, such as the "Bureau of Tax Enforcement For Cook County," or the "Tax Processing Unit, Bucks County." Id.  The letters also have ominous titles, such as "Notice of Intent to Levy Social Security Benefits," or "Distraint Warrant," id., and falsely threaten imminent penalties including criminal charges, suspension of social security benefits, seizure of property, offset of federal tax refunds, or garnishment of wages, id. ¶ 36.  Nationwide alleges that Selb, Plourde and others at ATS and GATL are actively involved in selecting which letters are sent to consumers.  Id. ¶ 34.  According to Gray, "Plourde and Selb . . . consistently choose the most coercive drafts for circulation." Id.

The letters falsely claim that the only way to avoid enforcement actions is to call a toll-free number within a certain time-period, sometimes as short as four days.  Id.  Nationwide alleges that, when the recipients call the listed telephone number, they are connected to one of defendants or their employees, who "confirms" the threats in the letter.  Id. ¶ 49. (According to Nationwide, "a portion of calls to ATS and GATL are automatically re-routed to Graupner, Barnes, TDG, and LTD, which have a fee-sharing arrangement with ATS and GATL." Id. ¶ 44.)  Nationwide further alleges that current Nationwide customers are told that the threat of enforcement is on account of Nationwide's ineffectiveness, and that those customers often replace Nationwide with one of defendants.  Id. ¶¶ 50–51.

To support these allegations, Nationwide refers to the account of one Ricardo Alvarez, a former Nationwide customer, who, in August 2020, "received a phony

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

government notice from ATS about his tax debt." Id. ¶ 52. (Nationwide does not attach this notice or quote directly from it.) Alvarez apparently stated that, "when he called the toll free number in the letter, he reached ATS's Wesley Turner . . . ." Id. Turner apparently "stated that Nationwide did not have the situation under control," that he was an "enrolled agent," and that he had "gone to law school." Id. Apparently on a separate call around that same time, Alvarez was told by Turner's assistant "that Mr. Turner [was] an attorney," which he apparently is not. Id.

Another former Nationwide customer, Roger Dearman, apparently told Nationwide that, in June 2020, "he received one of ATS's phony government notices and was deceived into firing Nationwide and hiring ATS." Id. ¶ 53. (Like with Alvarez's, Nationwide does not submit or quote from this letter.) Dearman apparently stated that he paid $30,000 to ATS in order to secure ATS' assistance in avoiding the enforcement action it said was pending against him, but then received no services. Id. ¶ 53.

A third, unnamed Nationwide customer apparently stated that he was "initially targeted by Selb, then referred by Barnes to an attorney at LTD." Id. ¶ 54. That attorney apparently "coached the customer on his separation from Nationwide and sent emails to Nationwide on behalf of the customer making huge demands." Id. Finally, Nationwide names five former customers who, Nationwide believes, were poached by defendants' alleged scheme. Id. ¶ 62.

Nationwide alleges that defendants' scheme not only injures customers, who must pay defendants for services that they already received from Nationwide (such as an initial assessment of their tax status), but also that it injures Nationwide itself. Id. ¶ 58. For instance, Nationwide alleges it must expend substantial resources calming customers who receive the threatening letters, and verifying the letters are false. Id. ¶ 61. Despite these efforts, Nationwide alleges it has "lost hundreds, if not thousands, of customers and significant market share" in several states. Id. ¶ 62. Furthermore, Nationwide alleges it is injured by defendants' "misappropriate[ion]" of prospective customers based on Nationwide's mailing lists, as discussed above. Id. ¶ 64. Nationwide alleges that Selb, Plourde, Bennet, Graupner and Barnes coach customers taken from Nationwide to file complaints against Nationwide with the Better Business Bureau and the Attorney General (unspecified which), as well as to leave negative reviews online, although they provide no specifics or evidence to support this. Id. ¶ 66.

**REDACTED CIVIL MINUTES – GENERAL     'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|---|---|---|---|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

ATS defendants now move to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6), and 9(b).

## III.  LEGAL STANDARD

### A.  Rule 12(b)(6)

A motion pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998).  A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

**B.      Rule 9(b)**

Rule 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity.  Rule 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud."  Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003).  A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies solely on that conduct to prove a claim. Id.  "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)."  Id.  However, where a plaintiff alleges claims grounded in fraudulent and non-fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements.  Id. at 1104.

A pleading is sufficient under Rule 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973).  This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth.  In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).  Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false."  Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

**REDACTED CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | | Date | June 7, 2021 |
|----------|------------------------|---|------|--------------|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | | |

## IV.   DISCUSSION

ATS defendants argue (1) res judicata and (2) the Settlement Agreement bar all of Nationwide's claims, and that (3) Nationwide fails to state a claim under RICO. The Court addresses each argument in turn.

### A.   Res Judicata

ATS defendants argue *res judicata* bars Nationwide's claims because they were the subject of the State Court Action. *Res judicata* "prevents relitigation of the same cause of action in a second suit" between the same parties or those in privity with them. Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 896 (2002). *Res judicata* applies if a subsequent suit involves "(1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 824 (2015). However, "[r]es judicata is not a bar to claims that arise after the initial complaint is filed." Allied Fire Prot. v. Diede Constr., Inc., 127 Cal. App. 4th 150, 155 (2005); see Media Rights Techs., Inc. v. Microsoft Corp., 922 F.3d 1014, 1021 (9th Cir. 2019) ("The rule in this circuit, and others, is that 'claim preclusion does not apply to claims that accrue after the filing of the operative complaint' in the first suit."). Put another way, "where it cannot be said that plaintiff knew or should have known of the claim when the first action was filed, *res judicata* should not bar the second action." Allied Fire Prot. v. Diede Constr., Inc., 127 Cal. App. 4th 150, 156 (2005) (citation omitted). It is the defendant's burden to establish that *res judicata* applies. Media Rights, 922 F.3d at 1021 (citing Taylor v. Sturgell, 553 U.S. 880, 906–07 (2008)).

ATS defendants argue that res judicata precludes Nationwide's claims here because they were resolved in the State Court Action. Furthermore, ATS defendants point out that, in its FAC, Nationwide alleged conducted that occurred before the State Court Action was filed. Reply at 5. Only after meeting and conferring did Nationwide file the SAC, which omitted these references. Id. In any case, the allegations in the SAC are still part of the same course of conduct, ATS defendants argue, as was the subject of the State Court Action. Id. at 6.

Nationwide responds that its claims arose after the State Court Action was filed. Opp. at 8. Furthermore, Nationwide argues the claims here differ from the causes of action asserted in the State Court Action. Id. at 10.

**REDACTED CIVIL MINUTES – GENERAL    'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

The claims in the State Court Action were based on allegations that ATS, Selb and Bennett breached or interfered with non-disclosure provisions in Selb's and Bennett's severance agreements with Nationwide. The breach of the severance agreements is not alleged in the SAC. More to the point, though, the claims here arose after the State Court Action was filed. Nationwide alleges that the underlying fraudulent scheme began after the Settlement Agreement was finalized, SAC ¶ 27, and the specific instances of mail and wire fraud alleged occurred in 2020, id. ¶¶ 52–53. ATS defendants present no argument to the contrary.

Accordingly, *res judicata* does not bar Nationwide's claims.

### B.    Settlement Agreement

ATS defendants further argue that Nationwide released its claims when it entered into the Settlement Agreement. Settlement agreements are subject to the rules of contract interpretation, Pension Tr. Fund for Operating Eng'rs v. Dalecon, Inc., No. C 11-02851 LB, 2014 WL 1007274, at *12 (N.D. Cal. Mar. 12, 2014), and effect should be given to "the mutual intention of the parties at the time [of the agreement]," Mountain Air Enter., LLC v. Sundowner Towers, LLC, 3 Cal. 5th 744, 752 (2017). When a settlement agreement includes a broad release of claims, in California, "the release of 'all claims and causes of action' must be given a comprehensive scope[.]'" Schroeder v. Envoy Air, Inc., No. CV 16-04911-MWF-KS, 2016 WL 11520388, at *6 (C.D. Cal. Sept. 27, 2016) (quoting Villacres v. ABM Indus. Inc., 189 Cal. App. 4th 562, 589 (2010)).

One significant exception to this deference toward releases is that "[a]n attempted exemption from liability for a future intentional tort or crime is generally held void." Jardin v. Datallegro, Inc., No. 08-cv-1462-IEG-RBB, 2009 WL 186194, at *6 (S.D. Cal. Jan. 20, 2009) (citation omitted). Indeed, pursuant to California Civil Code section 1668 ("Section 1668"), "a party cannot contract away liability for his fraudulent or intentional acts . . . ." Health Net of Cal., Inc. v. Dep't of Health Servs., 113 Cal. App. 4th 224, 234 (2003) (quotation and alteration omitted); see South Coast Properties, LLC v. T-Mobile West LLC, No. CV-15-0388-MFW (AGRx), 2015 WL 4554368, at *5 (C.D. Cal. July 28, 2015) ("[A]s a matter of statute and California public policy," "releases are void to the extent they purport to release [a party] from claims of fraud").

ATS defendants argue that "the Settlement Agreement that ended the prior lawsuit was sweeping in its scope, and unambiguous in its intention to release all present and future claims, both known and unknown, that in any way relate to the subject of the state court

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|---|---|---|---|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

claims." Mot. at 11. And because "the scope of this release validly covers future claims," "the fact that the SAC includes allegations that are subsequent to the execution of the Settlement Agreement is of no consequence . . . ."[2] Id. at 12.

Nationwide responds, first, that the Settlement Agreement is outside the scope of this motion because it is not incorporated by reference into the SAC, and it is not judicially noticeable. Opp. at 4–5. Furthermore, Nationwide argues California law prohibits the release of liability arising from intentional torts or crimes. Id. at 5–6.

Assuming, without deciding, that the Settlement Agreement can be considered on this motion, it nonetheless does not bar Nationwide's claims. The Settlement Agreement could not release future-arising claims based on intentional torts, which include fraud and tortious interference with contract, occurring after the parties entered into the settlement agreement. See Carpenters Sw. Admin. Corp. v. T&R Painting & Drywall, No. 16-6498-VAP (PLAx), 2017 WL 4769437, at *6 (C.D. Cal. Aug. 10, 2017) (relying on Section 1668 to reject assertion that release covered "any future conduct related to" agreements). ATS defendants' argument that the allegations here arise from conduct that is a "mere continuation" of the conduct underlying the State Court Action, Mot. at 11, Reply at 12–13, is unavailing for the reasons outlined above, see Section IV.A., supra.

ATS defendants rely heavily on Lopes v. De La Salle Inst., No. B185910, 2006 WL 2373912 (Cal. Ct. App. Aug. 17, 2006), for the proposition that Section 1668 cannot be read to prohibit the release of future-arising fraud claims. Reply at 10–11. But, again, this reliance is misplaced because it assumes the claims at issue here are based on the same alleged misconduct as that alleged in the State Court Action. In Lopes, an unpublished case from the California Court of Appeal, a plaintiff settled a potential suit against his former school involving claims of sexual abuse at the hands of a teacher there. The settlement included a broad release of liability. When, sometime later, the plaintiff learned that, even in the settlement negotiations, the school had concealed the date at which it knew

---

[2] ATS defendants also argue that the allegations in the SAC "are a mere continuation of conduct that was expressly alleged to be ongoing in the prior lawsuit." Id. at 13. However, this argument is ill-suited to a motion to dismiss because the Court must consider evidence to determine whether in fact the allegations are part of a continuous course of conduct.

**REDACTED CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|---|---|---|---|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

of the teacher's pattern of abuse, the plaintiff filed another suit. The court entered summary judgment against the plaintiff, finding that the settlement agreement had released those claims. The Court of Appeal affirmed. But the case is inapposite because, among other things, it did not address the release of claims that arose *from conduct occurring after the settlement*. In fact, the court there noted that plaintiff's fraud claims "depend[ed] on allegations that respondents concealed their knowledge about [the teacher] during a conversation *occurring before the draft complaint was prepared and the settlement was reached*." Lopes, 2006 WL 2373912, at *5 (emphasis added). The court went on to state that, "[a]llowing [the plaintiff] to sue for *the same concealment he alleged in his draft complaint* is therefore contrary to the express objective intention of the settlement." Id. (emphasis added).

Finally, ATS defendants' proposed interpretation of the term "object" in Section 1668 is too narrow. See Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.") The "object" of a contract does not mean strictly the main purpose of the contract, as ATS defendants suggest. See Carpenters, 2017 WL 4769437, at *6 (applying Section 1668 to release contained in broader settlement agreement). In any event, ATS defendants cite to no authority for their reading of Section 1668.

Accordingly, the Settlement Agreement did not release claims alleged in the SAC to the extent those claims are based on conduct occurring after the making of that agreement.

## C.      RICO Claim

The SAC alleges claims brought under several provisions of Section 1962 of the RICO statute, 18 U.S.C. § 1962.

### 1.      Section 1962(c)

To start, Nationwide alleges that Selb, Bennett, Plourde, Graupner and Barnes have violated Section 1962(c). SAC ¶¶ 76–80. Under 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a plaintiff must

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (en banc). A "'pattern' . . . requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "'[R]acketeering activity' is any act indictable under several provisions of Title 18 of the United States Code," Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004) (alteration in original), which includes the predicate acts of mail and wire fraud, and extortion, alleged here. 18 U.S.C. § 1961(1)(B); SAC ¶ 75.

### a.  Mail or Wire Fraud

"Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." Sanford v. MemberWorks, Inc., 625 F.3d 550, 557–58 (9th Cir. 2010) (citation omitted).

ATS defendants argue that nothing on the face of the letters tie the letters to any defendants, and that the SAC fails to allege any specific facts tying the letters to defendants. Mot. at 15. ATS defendants argue this is particularly important because Nationwide itself has been charged with sending similarly deceptive letters by several states' Attorneys General. Reply at 15–17. Further, ATS defendants argue that nothing in the letters mentions Nationwide. Mot. at 15. As to the allegedly fraudulent telephone calls, ATS defendants argue that these "contain neither the required 'specific content' of the false representation nor the required specific 'identity' of the speaker." Id. at 16. Finally, ATS defendants argue the claims impermissibly group defendants together without alleging which defendant was responsible for which act. Id. at 16–17.

Nationwide responds that Rule 9(b) does not require a plaintiff to plead facts relating to each instance of fraud over a multi-year period. Opp. at 12. Furthermore, in the context of corporate fraud, Rule 9(b) is relaxed because identifying individual actors within the company may be more difficult. Id. at 15. Finally, Nationwide argues that, because the letters are designed to appear to have been sent from a government agency, it would be nonsensical for defendants to have included their name in the letters, or to have mentioned Nationwide. Id. at 16–17.

As noted above, Rule 9(b) imposes a heightened pleading standard on fraud claims. The purpose of the rule is to ensure that "the factual circumstances of the fraud itself" are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Sanford,

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

925 F.3d at 559 (quotations omitted); see U.S. ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1051–52 (9th Cir. 2001).

Here, it is sufficient that Nationwide has alleged that defendants target taxpayers on Nationwide's mailing lists, sends letters to those taxpayers "warning" them of imminent action to enforce on their tax debt, trick the taxpayers into calling defendants, who then further mislead the taxpayers into believing Nationwide's ineptitude caused the supposed enforcement actions. These allegations adequately notify defendants of the particular misconduct alleged; defendants are not left in the position of "just deny[ing] that they have done anything wrong." Sanford, 925 F.3d at 559. There is no reason to believe Nationwide's failure to identify the recipients of the misleading letters, or the employees who fielded the telephone calls, will hamper defendants in their case. Furthermore, Nationwide has made clear "what is false or misleading about the statements"—that there are imminent enforcement actions—"and why it is false"—there are no such actions. Cooper v. Pickett, 137 F.3d 616, 625 (9th Cir. 1997). Rule 9(b) does not require that plaintiffs "allege, in detail, all facts supporting each and every instance of [fraud] over a multi-year period." SmithKline Beecham, 245 F.3d at 1051 (citing Cooper, 137 F.3d at 927).

At the June 7, 2021 hearing, ATS defendants reiterated their argument that Nationwide has not sufficiently connected the misleading letters to defendants. However, Nationwide alleges that the letters received by Alvarez and Dearman contained telephone numbers which, when dialed, connected Alvarez and Dearman to ATS. This shows at least two letters were associated with defendants, which, along with Nationwide's other allegations, is sufficient at this stage in the proceedings.

Accordingly, the Court **DENIES** ATS defendants' motion to dismiss Nationwide's claims under Section 1962(c) for failure to plead mail or wire fraud.[3]

---

[3] The Court notes that Nationwide also alleges that defendants engaged in Hobbs Act extortion, 18 U.S.C. § 1951, which constitutes another predicate act for RICO, 18 U.S.C. § 1961(1)(B); see SAC ¶¶ 75–80 (describing letters and telephone calls as "fraudulent and extortionate"). ATS defendants' motion does not address these allegations.

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|---|---|---|---|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

### b. *Proximate Cause*

ATS defendants argue that, even if Nationwide has alleged predicate acts sufficient to state a claim under Section 1962(c), it nevertheless fails to plead proximate cause. Section 1962(c) provides a cause of action to any person "injured in his business or property by reason of" a RICO violation. 18 U.S.C. § 1964(c). To show injury "by reason of" a RICO violation, "a plaintiff must prove that the defendant's unlawful conduct was not only a 'but for' cause of his injury but also the 'proximate cause' of the injury, as that concept has been understood at common law." Harmoni Int'l Spice, Inc. v. Hume, 914 F.3d 648, 651 (9th Cir. 2019) (quoting Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992)).

Here, Nationwide alleges that "Defendants' RICO violations have proximately caused—and continue to proximately cause—injury to Nationwide because those violations have directly reduced Nationwide's revenues and profits (in addition to harming Nationwide's reputation, goodwill, and market share)." SAC ¶ 87. It also alleges that it must expend significant resources calming customers frightened by the misleading letters, and that many customers simply terminate their relationships with Nationwide. Id. ¶¶ 61–62. Finally, Nationwide claims that, by targeting taxpayers on Nationwide's mailing lists, defendants prevent Nationwide from winning the business of potential customers who otherwise may have engaged Nationwide. Id. ¶ 64.

ATS defendants argue that these allegations fail to establish proximate causation because the SAC alleges no harm to Nationwide "that does not flow from alleged harm to the recipients of the alleged mailings, who are the ones directly impacted." Mot. at 19–20. Therefore, defendants argue, any harm to Nationwide is "indirect and attenuated," and, furthermore, "any attempt to assess purported damages to Plaintiff from Defendants' conduct would involve complex apportionment issues." Id. at 21.

Nationwide responds that the causation is not attenuated here because the SAC alleges that "the ATS Defendants target Nationwide's customers; make misrepresentations about Nationwide directly to Nationwide's customers; pay their employees special bonuses for appropriating Nationwide customers; and even time the misrepresentations to maximize Nationwide's injury." Opp. at 18. Furthermore, it argues that losses are not overly speculative because "each loss of a customer relationship—and the corresponding loss of future fees—can be traced directly to a malicious, targeted effort by Defendants to steal the customer by lying about Nationwide." Id. at 19.

**REDACTED CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

In <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639 (2008), the Supreme Court used the following hypothetical to explain why a plaintiff may be harmed "as a result of" a defendant's acts of mail fraud, even if the fraud was perpetrated on a third party:

> [S]uppose an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers and suppliers, but not to the rivals themselves. If the rival businesses lose money as a result of the misrepresentations, it would certainly seem that they were injured in their business "by reason of" a pattern of mail fraud, even though they never received, and therefore never relied on, the fraudulent mailings.

<u>Id.</u> at 649–50. The Ninth Circuit has cited to this example in at least one RICO case predicated on mail fraud. <u>See</u> <u>Harmoni</u>, 914 F.3d at 653.

<u>Bridge</u> is directly analogous to Nationwide's allegations that defendants make false statements to Nationwide's customers that Nationwide's ineptitude has resulted in impending enforcement action. Thus, to the extent Nationwide alleges defendants' letters to, and calls with, its own customers induced them to terminate their relationships with Nationwide in favor of defendants, Nationwide has sufficiently alleged proximate causation.[4]

At the June 7, 2021 hearing, ATS defendants reiterated their argument that <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451 (2006), and <u>Sybersound Recs., Inc. v. UAV Corp.</u>, 517 F.3d 1137 (9th Cir. 2008), control here. The plaintiff in <u>Anza</u>, Ideal Steel Supply Corporation ("Ideal"), was a purveyor of steel mill supplies and services. Ideal brought suit against its competitor, National Steel Supply ("National"). Ideal alleged that National had engaged in a fraudulent scheme by failing to charge New York sales tax to cash-paying customers, then filing fraudulent New York State tax returns to conceal this scheme. This scheme permitted National to reduce its prices without impacting its margin. National was thus able to "outcompete" Ideal and win a larger market share. The Supreme Court found proximate causation lacking, and rejected the Second Circuit's reasoning that "because [National's owners] allegedly sought to gain a competitive advantage over Ideal, it is

---

[4] To the extent Nationwide alleges it suffered losses as a result of defendants' sending letters to third parties with no relationship to Nationwide, the Court questions whether Nationwide can allege cognizable damages from that conduct.

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

immaterial whether they took an indirect route to accomplish their goal," holding instead that "[a] RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." Id. at 460.  The Court reasoned, in part, that "Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud," and that "[b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices."  Id. at 459.

In Sybersound, karaoke record producer Sybersound Records, Inc. ("Sybersound"), brought RICO claims against competitor karaoke record producers.  Sybersound alleged that the defendants had committed criminal copyright infringement by producing karaoke albums without acquiring licenses or paying royalties to the songs' copyright holders, and mail and wire fraud by misrepresenting to their customers that they had, in fact, acquired the requisite licenses.  This practice allowed the defendants to lower their prices, which allegedly won them customers who previously purchased karaoke records from Sybersound.  The Ninth Circuit, relying heavily on Anza, upheld the district court's dismissal of Sybersound's complaint for lack of proximate cause. Like in Anza, the causal chain was too attenuated because the defendants could have lowered their prices for any number of reasons, and because lower prices may not have been the only reason customers switched from Sybersound to the defendants.  Indeed, the Ninth Circuit reasoned that "the court would have to engage in a speculative and complicated analysis to determine what percentage of Sybersound's decreased sales, if any, were attributable to the [] Defendants' decision to lower their prices or a Customer's preference for a competitor's products over Sybersound's, instead of to acts of copyright infringement or mail and wire fraud."  Id. at 1148.

Here, unlike in Sybersound and Anza, defendants' alleged predicate acts do not provide a general competitive advantage over Nationwide.  This is not a case where defendants were able to lower their prices and "outcompete" Nationwide in the marketplace.  Rather, defendants are alleged to directly target Nationwide's customers and prospective customers and mislead them specifically about Nationwide.  It is not, therefore, that Nationwide is losing customers for any number of reasons—Nationwide is losing customers because defendants are targeting its customers and misleading them about Nationwide's effectiveness.  Given the material distinctions between this case and Anza

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

and <u>Sybersound</u>, the Court remains persuaded by the example given in <u>Bridge</u> and adopted in <u>Harmoni</u>, which clearly parallels the allegations here.[5]

Accordingly, the Court **DENIES** ATS defendants' motion to dismiss Nationwide's claims under Section 1962(c) for failure to plead proximate causation.

> 2. <u>Section 1962(a)</u>

Nationwide further alleges that ATS, GATL and TDG have violated Section 1962(a). SAC ¶¶ 81–85. Section 1962(a) makes it unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

To state a claim for a violation of Section 1962(a), a plaintiff must allege proximate causation, among other things. <u>See Sybersound Recs., Inc. v. UAV Corp.</u>, 517 F.3d 1137, 1149 (9th Cir. 2008). As such, "a 'plaintiff . . . must allege facts tending to show that he or she was injured by the use or investment of racketeering income.'" <u>Id.</u> (quoting <u>Nugget Hydroelectric, L.P. v. Pacific Gas and Electric Co.</u>, 981 F.2d 429, 437 (9th Cir. 1992)). However, "[r]einvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation." <u>Id.</u> Otherwise, "almost every pattern of racketeering activity by a corporation would be

---

[5] ATS defendants also urged that <u>Hemi Grp., LLC v. City of New York, N.Y.</u>, 559 U.S. 1 (2010), is controlling. In <u>Hemi</u>, the City of New York brought RICO claims against a New Mexico cigarette retailer for allegedly defrauding the State of New York by not reporting all New York State purchasers of its cigarettes. This, in turn, reduced the City's tax revenue because the City relied on the State's records to track down City residents who did not report taxes owed on their out-of-state cigarette purchases. But the causation alleged in <u>Hemi</u> was even more attenuated than in <u>Anza</u>: the City's theory required the Court to "extend RICO liability to situations where the defendant's fraud on the third party (the State) has made it easier for a *fourth* party (the taxpayer) to cause harm to the plaintiff (the City)." <u>Id.</u> at 11 (emphasis in original).

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|---|---|---|---|
| Title | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

actionable under § 1962(a), and the distinction between § 1962(a) and § 1962(c) would become meaningless." <u>Westways World Travel v. AMR Corp.</u>, 182 F. Supp. 2d 952, 960 (C.D. Cal. 2001) (quotation omitted). Instead, a plaintiff must allege that it "would not have been injured by the predicate act . . . , but would have been directly injured by the reinvestment of the proceeds resulting from [that act]." <u>Sybersound</u>, 517 F.3d at 1150. A plaintiff must therefore "allege[] . . . injury separate and distinct from the injuries incurred from the predicate act itself." <u>Id.</u> at 1149.

ATS defendants argue that Nationwide fails to allege that it was harmed "by the use or investment of racketeering income," but rather alleges "mere reinvestment" of racketeering proceeds. Mot. at 23. Nationwide responds that it has alleged more than mere reinvestment; specifically, it has alleged that ATS and GATL use racketeering income to further their scheme by paying bonuses to employees or agents who succeed in taking a customer from Nationwide. Opp. at 20.

Nationwide's claims under Section 1962(a) fail because they simply allege that ATS, GATL and TDG "participat[ed] in the racketeering activities and us[ed] income from those activities to operate the enterprise." SAC ¶¶ 82–84. This is insufficient to establish proximate causation under Section 1962(a). <u>See KLE, Inc. v. Medisca, Inc.</u>, No. CV 19-1916 PA (JEMx), 2019 WL 4261882, at *5 (C.D. Cal. June 3, 2019) (dismissing claim where plaintiff alleged defendant "violated 18 U.S.C. § 1962(a) by using income derived, directly or indirectly, from a 'pattern of racketeering activity' . . . in operating its business . . ." (alterations in original)). Even if Nationwide had alleged ATS, GATL and TDG reinvested the proceeds from the fraudulent scheme into furthering that scheme, the claim would still fail. <u>See Sybersound</u>, 517 F.3d at 1149. In any event, Nationwide's Section 1962(a) claims fail for the additional reason that they are "general, conclusory, and vague." <u>Nugget</u>, 981 F.2d at 437.

Accordingly, Nationwide has failed to state a claim under Section 1962(a), and the Court **GRANTS** ATS defendants' motion to dismiss these claims.

        3.     <u>Section 1962(d)</u>

Nationwide alleges that all defendants have violated Section 1962(d), which makes it unlawful to conspire to violate Section 1962(a), (b) or (c). SAC ¶ 86; 18 U.S.C. § 1962(d). ATS defendants argue that, "[b]ecause Plaintiff cannot satisfy the essential element of proximate causation as to its substantive RICO claims, its conspiracy claims under Section 1962(d) necessarily fail as well." Mot. at 22. But because, as discussed

**REDACTED CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:20-cv-10090-CAS-MAAx | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title    | TAX RELIEF, INC. v. TERRANCE SELB ET AL | | |

above, Nationwide's claims under Section 1962(c) survive, ATS defendants' argument regarding Section 1962(d) fails.

Accordingly, the Court **DENIES** ATS defendants' motion to dismiss Nationwide's claims under Section 1962(d).

### D.      Lanham Act and Unfair Business Practices Act Claims

Finally, ATS defendants argue that Nationwide's Lanham Act and Unfair Business Practices Act claims should be dismissed because they are based on fraud and therefore also held to Rule 9(b) pleading standards.  Mot. at 17 n.13.  However, because Nationwide's claims for mail and wire fraud survive, ATS defendants' argument is unavailing.  Accordingly, the Court **DENIES** ATS defendants' motion to dismiss these claims.

## V.      CONCLUSION

In accordance with the foregoing, the Court **GRANTS in part** and **DENIES in part** defendants' motion to dismiss.

IT IS SO ORDERED.

| | 00 | : | 19 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |