GREG L. KIRAKOSIAN (SBN 294580)
**KIRAKOSIAN LAW, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE: (213) 417-9790
FACSIMILE:  (213) 477-2355
[GREG@KIRAKOSIANLAW.COM]

*Attorneys for Defendants-Counterclaim
Plaintiff American Tax Solutions, Inc.;,
and Defendants Terrance Selb; Tyler
Bennett; Geoff Plourde; and
GetATaxLawyer.com, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| AMERICAN TAX SOLUTIONS, INC.;<br><br>          Counterclaim Plaintiff,<br><br>     v.<br><br>NATIONWIDE TAX EXPERTS, INC.;<br>NEXT LEVEL ADVISORS, INC.;<br>GREENLAW CONSULTING GROUP,<br>INC.; ALLSTATE TAX GROUP, LLC;<br>PATRICK OAKES; NICHOLAS<br>JOHNSON, MICHAEL SASSON,<br>MICHAEL GRAY, MICHAEL<br>BAUM; MATTHEW LEVY; JOSEPH<br>LANCASTER; ERICH MAGIAR;<br>AND ANDREW RIOS<br><br>          Counterclaim Defendants. | Case No.  2:20-cv-10090-CAS-MAA<br><br>**FIRST AMENDED COUNTERCLAIM COMPLAINT FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT, THE LANHAM ACT, AND VARIOUS STATE LAWS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Action Filed:     November 3, 2020<br><br>Trial Date:        None Set |

## <u>TABLE OF CONTENTS</u>

COUNTERCLAIMS ................................................................................................. 1

INTRODUCTION .................................................................................................... 1

THE PARTIES ......................................................................................................... 2

JURISDICTION ....................................................................................................... 4

FACTUAL BACKGROUND ................................................................................... 4

     A.    History of Counterclaim Defendants ....................................................... 4

     B.    Prior State Court Lawsuit ........................................................................ 7

NATIONWIDE'S FRAUDULENT SCHEME ......................................................... 7

     A.    Nationwide Engages in Predatory, Misleading Practices To Steal Business From Competitors ..................................................................... 7

     B.    The Nationwide Defendants Have Been and Continue to Be Subject to Prosecution for Fraud by Authorities Across the Country ................................................................................................... 17

CLAIMS FOR RELIEF ........................................................................................ 23

PRAYER FOR RELIEF ........................................................................................ 31

DEMAND FOR JURY TRIAL ............................................................................. 31

## COUNTERCLAIMS

1.     Counterclaim Plaintiff American Tax Solutions, Inc. hereby asserts against Counterclaim Defendants Nationwide Tax Experts, Inc. f/k/a Tax Relief, Inc. d/b/a National Tax Experts ("Nationwide"), Next Level Advisors, Inc. ("Next Level"), Greenlaw Consulting Group, Inc. d/b/a Greenlaw Tax Group ("Greenlaw"), Allstate Tax Group LLC ("Allstate"), Patrick Oakes ("Oakes"), Nicholas Johnson ("Johnson"), Michael Sasson ("Sasson"), Michael Gray ("Gray"), Michael Baum ("Baum"), Matthew Levy ("Levy"), Joseph Lancaster ("Lancaster"), Erich Magiar ("Magiar"), and Andrew Rios ("Rios") claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 *et seq.*; the Lanham Act, 15 U.S.C. § 1125(a); the unfair competition and deceptive trade practices laws of several states; for tortious interference with contractual relations; and for tortious interference with prospective economic advantage.

2.     In support of these claims, Counterclaim Plaintiff alleges as follows:

## INTRODUCTION

3.     Nationwide, Next Level, Greenlaw and Allstate together with Oakes, Johnson, Sasson, Gray, Baum, Levy, Lancaster, Magiar, and Rios (collectively, the "Nationwide Defendants"), have been engaged in a scheme to unfairly and unethically steal the clients of their competitor American Tax Solutions, Inc. ("ATS"). The Nationwide Defendants do so by improperly using proprietary ATS mailing lists along with other proprietary ATS information stolen by Sasson, Magiar, and Gray, and sending threatening, misleading, fraudulent, and illegal mailings created by Gray and Rios (and others) to actual and prospective ATS clients. The Nationwide Defendants follow up on these mailings through phone calls using automated dialers in violation of the Telephone Consumer Protection Act and the Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, (47 U.S.C. § 227) and utilize data analytics provided by Lancaster to maximize the impact of these mailings on ATS.

4.     The mailings sent by the Nationwide Defendants are specifically

1   intended to and have the actual effect of terrifying their recipients through various
2   lies.  These lies include falsely claiming that the mailings come from an official
3   government body, falsely claiming that serious consequences are imminent when they
4   are not, and conveying the false message that ATS has failed to do its job.

5       5.      When vulnerable individuals receive the misleading notices, they are
6   scared into calling a number that connects them to the Nationwide Defendants, who
7   continue the scheme by conveying more lies, which drives the recipients out of their
8   existing or away from their prospective arrangements with ATS, and into the clutches
9   of the Nationwide Defendants.

10      6.      The Nationwide Defendants follow up on these misleading notices using
11  automated dialers to ensure that as many of ATS' clients as possible are reached and
12  stolen.

13      7.      Once a consumer is in grip of the Nationwide Defendants, hefty fees are
14  collected before the fleeced individual is abandoned without so much as a returned
15  phone call, let alone actual tax assistance.

16      8.      Customers across the country have cried out about the Nationwide
17  Defendants' abusive practices and failure to perform their advertised services.

18      9.      Law enforcement and regulators in numerous states have taken actions
19  against the Nationwide Defendants for this fraudulent conduct, documenting the
20  predatory and illegal actions.  Despite case after case of state Attorneys General
21  pursuing actions against them, the Nationwide Defendants brazenly continue their
22  deceitful conduct in order to drive their legitimate competitors out of business.

23      10.     Year after year, the Nationwide Defendants change their operating name
24  to try and outrun their reputation and dupe vulnerable debtors, all with the aim and
25  effect of committing a fraudulent scheme designed to harm ATS.

26                          **THE PARTIES**

27      11.     Counterclaim Plaintiff American Tax Solutions, Inc. ("ATS") is a tax
28  assistance firm based in Los Angeles, California.  ATS negotiates settlements of its

clients' tax debts with the IRS and state agencies, and helps clients enroll in tax relief programs.

12.     Counterclaim Defendant Nationwide Tax Experts, Inc., f/k/a Tax Relief, Inc. d/b/a, *inter alia*, National Tax Experts, is a company holding itself out as and purporting to offer tax consultation services located in Glendale, California.

13.     Counterclaim Defendant Next Level Advisors, Inc., is a company located in Sun Valley, California that on information and belief provides marketing services to the Nationwide Defendants.

14.     Counterclaim Defendant Greenlaw Consulting Group, Inc. d/b/a Greenlaw Tax Group, is a company holding itself out as and purporting to offer tax consultation services located in Los Angeles, California.  Greenlaw is run by the same people as Allstate and Nationwide.  Allstate and Nationwide conduct much of their business through Greenlaw.

15.     Counterclaim Defendant Allstate Tax Group, LLC. is a company holding itself out as and purporting to offer tax consultation services located in Los Angeles, California.   Allstate is run by the same people as Greenlaw and Nationwide. Greenlaw and Nationwide conduct much of their business through Allstate.

16.     Counterclaim Defendant Patrick Oakes ("Oakes") is the Chief Executive Officer, Secretary, Chief Financial Officer, and sole Director of Nationwide, the former Chief Executive Officer, Secretary, Chief Financial Officer, and sole Director of Next Level, and the Chief Executive Officer of Allstate.

17.     Counterclaim Defendant Nicholas Johnson ("Johnson") was the Chief Executive Officer, Secretary, Chief Financial Officer, and President of National Tax Experts prior to its merger into Tax Relief, Inc. and is, based on information and belief, an employee or agent of Nationwide.

18.     Counterclaim Defendant Michael Sasson ("Sasson") is an employee or agent of Nationwide who previously worked for ATS.

19.     Counterclaim Defendant Michael Gray a/k/a Mickey Gray ("Gray") is

an employee or agent of Nationwide that was previously employed as a marketing director with ATS.

20. Counterclaim Defendant Michael Baum ("Baum") is the Chief Executive Officer and Chief Financial Officer of Greenlaw.

21. Counterclaim Defendant Matthew Levy ("Levy") is the Secretary and sole Director of Greenlaw Consulting Group, Inc. and was previously an employee or agent of Nationwide.

22. Counterclaim Defendant Joseph Lancaster ("Lancaster") is an employee or agent of Nationwide.

23. Counterclaim Defendant Erich Magiar ("Magiar") is an employee or agent of Nationwide that was previously engaged as a contractor with ATS.

24. Counterclaim Defendant Andrew Rios ("Rios") is the marketing manager of Nationwide, the Chief Executive Officer, Secretary, Chief Financial Officer, and sole Director of Next Level and the Manager of Allstate.

25. Counterclaim Defendants Nationwide, Greenlaw, Oakes, Johnson, Sasson, Gray, Baum, Levy, Lancaster, Magiar, and Rios are collectively referred to as the "Nationwide Defendants."

## **JURISDICTION**

26. The Court has jurisdiction under Federal Rule of Civil Procedure 13(a) and 13(b).

## **FACTUAL BACKGROUND**

### **A.    History of Counterclaim Defendants**

27. Patrick Oakes opened Allstate in 2006 which, like the Nationwide Defendants, purported to offer consumers help with their outstanding tax debts.

28. Consumers who contacted Allstate and Oakes were promised that Allstate could settle their tax debts for a low dollar amount in exchange for a large up-front fee of $2,500.00 or more.

29. Oakes never had any intention of providing these services and was solely

focused on making as much money as possible.  Oakes and his employees and contractors routinely charged credit cards without permission and provided consumers with various excuses for failure to provide the requested services.  Oakes routinely ignored requests for refunds, which resulted in consumers attempting to recover the funds they had paid to Allstate and Oakes.

30.    Allstate and Oakes entered into a credit card processing contract with Card Service International, Inc. (what is known as an "acquirer"—a financial institution that authorizes and processes credit or debit card transactions for a merchant) to facilitate collection of these fees.  Oakes specifically agreed with Card Service International to only run authorized charges and to promptly provide cardholders credits as requested.

31.    Card Service International subsequently cancelled this contract when it discovered that Oakes was running consumer credit cards without authorization and was not providing services, leading to consumer chargebacks that Card Service International ended up being forced to pay out.

32.    Oakes ignored Card Service International's attempts to collect the debt, resulting in Card Service International being forced to sue him in the Los Angeles Superior Court and securing a judgment against him in 2008.

33.    Oakes then engaged in a series of delay tactics to frustrate Card Service International including transferring all his assets to his wife and then filing for divorce and when that failed, filing for bankruptcy.  The judgment was subsequently determined by the Bankruptcy Court to be non-dischargeable due to Oakes' multiple acts of fraud.

34.    At or around the same time as he was avoiding Card Service International, Oakes subsequently recruited Nicholas Johnson to assist him in opening several companies that ultimately morphed into the Nationwide Defendants to continue the same scheme of taking money from vulnerable consumers in the guise of providing services that would never be rendered.

35.   Oakes subsequently expanded his operation, recruiting many individuals to assist him in handling the large number of calls he was receiving from vulnerable consumers.

36.   Oakes routinely misclassified these individuals as independent contractors, which allowed him to save thousands if not millions of dollars in payroll taxes that Oakes used for his own personal gain or to further the growing scheme.

37.   Oakes also realized as consumers began to send him their financial information that he could use this information to charge them large additional fees. He then set up a special sales group focused on charging clients additional fees under the ruse that their case had become harder than originally expected to work.

38.   In 2009, Oakes hired Terrance Selb ("Selb") as part of this sales group based on Selb's demonstrated skills working with business owners in various industries and states to successfully improve their business.

39.   Selb was very successful in working with clients to engage Oakes' and the Nationwide and brought in millions of dollars of fees for Oakes while engaged by Nationwide.

40.   Selb subsequently discovered that Oakes had no intention of fulfilling the services that Selb was selling for Oakes and when Selb complained and threatened to leave, Oakes reluctantly began to hire licensed professionals to perform these services but implemented no quality control standards for these professionals.

41.   Selb began spending most of his time having to convince clients to remain on board and force Oakes' staff to actually perform the contracted services. At one point in time, Oakes had over $2 million dollars in services that were billed but never performed.

42.   Selb also discovered that Oakes was systemically draining the bank accounts of Nationwide clients via unauthorized credit card charges and ACH transfers.  When Selb confronted Oakes about these charges and the ongoing failure to provide services, Oakes terminated Selb's contract.

Case No. 2:20-cv-10090-CAS-MAA
FIRST AMENDED COUNTERCLAIM COMPLAINT

### B. Prior State Court Lawsuit

43. In November 2018, Nationwide, then in the form of one of its many former aliases ("Tax Relief, Inc.", d/b/a "National Tax Experts"), sued Selb, Tyler Bennett, and American Tax Solutions, Inc. in Los Angeles Superior Court.

44. The state court lawsuit settled in October 2019, with the parties agreeing to a walk-away with no money exchanged and executing an expansive, mutual release of all claims.

45. Not long after agreeing to settle its baseless state court action, Nationwide turned around and filed its current federal case.

46. Like Nationwide's current lawsuit, its prior state action complained that competitors were competing for Nationwide's clients, including by soliciting their business. Unable to compete on the merits of its business or in any legitimate way, Nationwide has returned to court as yet another attempt to attack its competitors ATS and GATL.

47. Nationwide's abysmal customer reviews and the myriad government actions again it belie any suggestion that competitors' conduct makes current clients leave Nationwide or keeps prospective clients from it.

48. Like in the state court case, in its current action Nationwide alleges that Counterclaim Plaintiff attempts to steal and mislead consumers. In a perverse twist, the opposite is true.

### NATIONWIDE'S FRAUDULENT SCHEME

### A. Nationwide Engages in Predatory, Misleading Practices To Steal Business From Competitors

49. The Nationwide Defendants are engaged in a campaign to steal ATS' customers—and their money—through a scam that begins with mailing fraudulent, extortionate letters to those who may need assistance managing their tax debt.

50. The Nationwide Defendants have devised and enacted a scheme to steal ATS' customers in which they mail predatory, misleading, threatening, fraudulent

1 solicitations to the same people that ATS offers its tax assistance services to.

2      51.   The Nationwide Defendants send letters to ATS' customers and

3 prospects impersonating the government and lying about imminent enforcement

4 actions. These letters contain phone numbers that connect recipients to Nationwide,

5 which convinces ATS customers and potential clients that only Nationwide can help

6 them.

7      52.   The Nationwide Defendants have sent—and continue to send—

8 thousands of letters to ATS' customers and prospects across the country. Defendants

9 Rios, Oakes, Johnson, and Gray have crafted these letters to deceive and terrify the

10 recipients to the greatest extent possible, and oversee their illegal distribution and the

11 fraud of which they are a key part year after year.

12      53.   The Nationwide Defendants' mailing are designed to mislead consumers

13 into believing that they are receiving official notices from the government.

14      54.   These letters bear names and return addresses of fictional government

15 agencies and courts, and contain threatening language and lies about imminent loss

16 of property. One example of this tactic designed to terrify recipients is as follows:

17

18   ☑ Taxpayer Copy    **URGENT NOTIFICATION**
☐ Tax Department Copy

19 | Form 7041o-8g (Rev. January 2012) | Department of Taxation — Internal Taxation Services **NOTICE: Intent to Collect - Immediate Response Required** |

20 DATE: 6/30/2016

21                                  TELEPHONE NUMBER OF TAX OFFICE:
   **NAME AND ADDRESS OF DELINQUENT TAXPAYER**       CALL TOLL FREE (8J47)  1-800-728-4914

22                                        SEQ NUM: 3479t891

23

24

25    **REPLY TO:** 1-800-728-4914

   **DELINQUENT TAX PAYER NOTICE TO COLLECT**

26

27    **CALL IMMEDIATELY TO PREVENT POTENTIAL PROPERTY LOSS, BANK LEVY, AND/OR WAGE GARNISHMENT, YOUR IMMEDIATE RESPONSE IS REQUIRED.**

28

55.    Additional examples of misleading, threatening headers on Nationwide Defendants' letters include the following:



56.    The Nationwide Defendants send advertisements to consumers that contain representations about the immediate need for consumers to call a number that is made to appear to be from a court or another government agency.

57.    Among other statements, the Nationwide Defendants' advertisements purporting to be from a court or government agency contain the following predatory, statements, which are designed to terrify the recipient into calling Nationwide:

- "ADVERSE ACTIONS PENDING!"
- "Unless you take action to protect your property, it may be at risk."
- "You must respond to this notice."
- "We cannot guarantee any protection if you do not take the necessary steps to comply."

58.    In connection with their widespread, long-running unethical and illegal conduct, the Nationwide Defendants have inappropriately obtained the mailing list that ATS uses and other proprietary ATS data from Sasson, Gray, and Magiar.  The Nationwide Defendants have used this list and other proprietary ATS data as a tool in their long-running scheme to steal clients by fraud.

59.    The Nationwide Defendants' purpose in sending their fraudulent letters is to scare actual and prospective customers away from ATS by creating a false sense

of urgency and a false association with official government entities—unethical and
illegal tactics for which Nationwide has been and is currently being prosecuted by
numerous state Attorneys General.

60.     The Nationwide Defendants follow up on these fraudulent letters through
unsolicited phone calls using automated dialers by agents or employees of Greenlaw
based on marketing information provided by Next Level and data analytics provided
by Lancaster to ensnare as many ATS consumers as possible in their scheme.

61.     The Nationwide Defendants' intended and specific goal in their scheme
is to lie to as many of ATS' current and prospective customers as possible, interfering
with as many of ATS' actual and prospective contractual relationships as possible.

62.     On top of misappropriating existing ATS customers, the Nationwide
Defendants misappropriate prospective customers.  The Nationwide Defendants gain
access to ATS' prospective clients by getting those lists from U.S. Mailing House,
then use fear and deception to take a large share of those prospects from ATS.  To be
sure, the Nationwide Defendants are not taking remote, theoretical prospects from
ATS:   the lists of potential customers are target-rich because of ATS' use of
sophisticated vendors to identify those in need of tax debt relief services.  A large
proportion of the prospects the Nationwide Defendants deceive into becoming their
customers otherwise would hire ATS.

63.     Taking customers and prospects away from ATS and harming their
business is exactly what Oakes and Johnson agreed they would strive to accomplish
by their misdeeds both individually and through Nationwide.  The Nationwide
Defendants have also used proprietary information from former ATS employees to
steal customers.

64.     Erich Magiar began his work relationship with ATS in or around March
2020, in a sales position, and continued in that role until December 2020 when he
ended his work relationship with ATS.

65.     On information and belief, on or about December 2020, Magiar accepted

1    a position with Greenlaw, Oakes' latest rebranding endeavor.

2        66.    Michael Sasson began his work relationship with ATS around May 2019,

3    in a sales position, and continued in that role until March 2020 when he left this role.

4        67.    On information and belief, on or about March 2020, Sasson accepted a

5    position with Nationwide.

6        68.    Mickey Gray began his work relationship with ATS in or around May

7    2018, in a marketing position, and continued in that role until October 2018 when he

8    was terminated for cause after failing a drug test.

9        69.    On information and belief, on or about November 2018, Gray accepted

10   a position with Nationwide.

11       70.    As part of Magiar, Sasson, and Gray's job duties during their work

12   relationship with ATS, they had access to ATS' confidential and/or proprietary

13   company information, including, but not limited to, ATS' techniques, business plans,

14   product and market studies, as well as customers' and prospective customers' names

15   and contact information, customer and prospective customer lists, credit card

16   information, customer-specific pricing, and customers' history and detailed notes kept

17   by ATS as to each customer's and/or prospective customer's information, all saved in

18   ATS' business records.

19       71.    This confidential information allowed ATS to, among other things, target

20   its marketing to individuals and groups most likely to use their services by comparing

21   the publicly available information with information gathered on their past/existing

22   clients, thereby reducing substantial costs, time, and resources that it would have to

23   incur by just relying on publicly available information.

24       72.    Magiar, Sasson, and Gray have provided to Nationwide, or companies

25   affiliated with Nationwide, ATS' confidential information, and Nationwide has used

26   this proprietary information to divert and/or attempt to divert, and/or assist other

27   counter-defendants in diverting or attempting to divert, existing and/or prospective

28   customers from ATS to Nationwide.

73.     Magiar's, Sasson's, and Gray's conduct includes using ATS' confidential information to communicate with and solicit existing and/or prospective customers to use Nationwide's services rather than ATS' services.

74.     Nationwide received and used the confidential information from former ATS employees knowing that it was obtained illegally or unlawfully and/or without ATS' authorization.

75.     As illustrated above, the substance of the Nationwide Defendants' fake government notices are designed to create panic and fear, falsely stating that enforcement actions against the recipients are imminent.  The mailings typically threaten that if the debtor does not call the toll-free number by a looming deadline, the government will press criminal charges, suspend social security benefits, seize property, offset federal tax refunds, garnish wages, or take other enforcement measures.

76.     For the many recipients of the letters who are already ATS customers, the false message being conveyed is not just that crisis is imminent, but also that ATS has failed to do its job.

77.     For instance, in one mailing that the Nationwide Defendants have sent to *thousands* of consumers, they included large font at the top of the page stating:



78.     The advertisement warns that the consumer's "Bank Account, Property, and other Assets are now Warranted for Seizure" and threatens that the consumer "MUST address" their tax debt "before [their] Bank Account and other Assets are Seized."  It also claims that failure to pay the tax lien in full may result in "additional fees, interest, and penalties" and "additional proceedings including the above-

mentioned Bank Account Seizure."

79.    These threats and statements are all lies designed by the Nationwide Defendants to terrorize the letters' recipients, driving them away from ATS if they have already retained them, or into Nationwide's clutches if they have not retained ATS but would have done so in the absence of these predatory mailings.

80.    The Nationwide Defendants have no problem impersonating the court system in their scheme to steal customers and fleece vulnerable individuals.  Indeed, the envelopes used to deliver their direct mail advertisements has including a return address that is intended to and does make the mailing appear to have been sent by a court:

> Notice of Active Warrant/Tax Lien
> Bank Account and Asset Seizure Warning
> Anne Arundel County Court House
> Maryland

81.    In the words of just one of the numerous state Attorneys General who have brought charges against the Nationwide Defendants for their long-running fraud, their mailings are "intended to give consumers the false impression that unless they call immediately, immediate legal action will be taken against their assets."

82.    The Nationwide Defendants mail many versions of these phony court documents and other letters designed to threaten and scare financially vulnerable individuals away from seeking legitimate tax assistance from entities like ATS and into paying Nationwide large up-front payments for *services that Nationwide then never renders*.

83.    Per the Maryland Attorney General:  "Consumers who have been charged for [National's and Oakes'] tax debt relief services often have not received the promised services or results years after retaining [them].  Instead, [National and Oakes] provide only a series of excuses as to why they have not made progress in reducing the consumers' tax liabilities.  On many occasions, [National and Oakes]

simply ignore or fail to respond to consumers' requests for information and a status about their case. . . . When consumers request refunds from [National and Oakes, they] typically refuse[] to return consumers' money or ignores the request completely."

84. The Michigan Department of Treasury has warned that "taxpayers with past-due tax debts should be aware of an aggressive scam that's making the rounds through the U.S. Postal Service"—that is, precisely the scams that the Nationwide Defendants perpetrate.

85. The Nationwide Defendants regularly prey on elderly consumers using the threat of suspending social security benefits—an action the IRS never takes. Indeed, the Nationwide Defendants target debtors of all types, including churches, hospitals, and veterans with tax debts.

86. The Nationwide Defendants perpetrate their fraud in various states throughout the country without regard to consumer protection laws, licensing requirements, registration requirements, or basic ethical standards. This is all done in an effort to terrify and steal customers from their competitors ATS.

87. The Nationwide Defendants' manipulative and predatory mailings yield phone calls, which, upon information and belief are fielded by Allstate, Greenlaw, Next Level, and Nationwide employees and officers, including Sasson, Rios, Oakes, Magiar, Levy, Johnson, and Baum.

88. Although the threatening language and jargon may vary from advertisement to advertisement, "[t]he net impression that [Nationwide's and Oakes'] print advertisements leave consumers with is that they are being contacted by a [] court or another government agency and that they are facing the imminent seizure of their bank accounts or other government action unless they call" the number listed.

89. This number, unbeknownst to consumers, connects them to Nationwide so that the Nationwide Defendants can enact the next phase of their scheme: lie to consumers about their own services and smear the work and reputation of ATS.

90.     When ATS' customers and other consumers call in response to the Nationwide Defendants' fraudulent letter, they are told lies about ATS to steer and/or lure them away.

91.     ATS customers who do not call in response to the letters are bombarded with calls using automated dialers by Allstate, Greenlaw, Next Level, and Nationwide, at the direction of Rios, Levy, Baum, and Magiar using data analytics provided by Lancaster.   ATS customers who answer these calls are directed to employees or agents of the Nationwide Defendants who then proceed to lie about ATS to steer and/or lure them away.

92.     On information and belief, Oakes, Johnson, and others acting at their direction follow the same script when they target ATS' customers:  they trick ATS' customers into believing that they are about to go to jail, lose their social security benefits, lose their homes, or be subject to some other imminent enforcement action, when in reality, the customers face no such imminent enforcement.

93.     On information and belief, once Oakes, Johnson, or others acting at their direction convinces the ATS customer that crisis is imminent, the customer is told that ATS is to blame—another lie.   Whoever fields the call—and only discovery will reveal who has fielded which calls from ATS' customers—knows to falsely state that the customer is about to be in serious trouble (which is not the case) because ATS has not performed the tax resolution services it was hired to perform.

94.     Many ATS customers, including but not limited to customers in California, Iowa, Maryland, and New York, have relied on the Nationwide Defendants' lies over the phone and fired ATS in favor of hiring Nationwide.

95.     Other consumers who would otherwise hire ATS are steered away from doing do by the lies that they are told by the Nationwide Defendants.

96.     As detailed below, the Nationwide Defendants' deception comes at great cost not just to ATS, but also to consumers who are preyed upon by the Nationwide Defendants.   The balance of equities and the public interest thus favors the injunctive

relief sought by this action.  Eliminating a fear-inspiring, fraudulent scheme would promote the public good.  And the Nationwide Defendants can hardly claim that they would suffer any undue hardship by being ordered to compete without relying on lies and fearmongering.

97.    On top of harming consumers nationwide, the Nationwide Defendants' deceitful acts have caused and continue to cause significant financial, reputational, and other injury to ATS' businesses.

98.    Many of the thousands of ATS customers who are contacted by the Nationwide Defendants reach out to ATS in a panic—especially elderly clients who have been tricked into believing they are about to lose their social security benefits.  ATS has expended substantial resources—including hundreds of hours worked—working to persuade its own customers to stay.  In most cases, ATS must waste the time of attorneys or enrolled agents to call the IRS jointly with the client in an effort to demonstrate that the Nationwide Defendants' letter was not a government notice, but rather a slimy scam.  On top of having a great opportunity cost, this diversion of resources is impeding ATS' operations.

99.    In many cases, ATS customers have been so shaken by the Nationwide Defendants' lies that ATS' relationships with the customer cannot be saved.  ATS has lost hundreds, if not thousands, of customers and significant market in states across the country as a direct result of the Nationwide Defendants' predatory, fraudulent, and unfair acts.

100.   Even when ATS is able to save a customer relationship, the Nationwide Defendants' stunt still has strained the relationship.

101.   The injuries ATS have sustained and continue to sustain are by no means merely financial.  After Nationwide acquires an ATS customer, Oakes and Johnson work to coopt the customer to defame ATS.  They have conversations with the customer in which they urge the customer to file complaints against ATS with the Better Business Bureau and the Attorney General and on customer review platforms

based on the lies the customer has been told.  On information and belief, Oakes and Johnson have trained numerous others to follow a similar script with new customers they appropriate from ATS.  The Nationwide Defendants' efforts are tarnishing ATS' reputation and irreparably harming their goodwill.  There is no adequate remedy at law for these nonmonetary injuries.

### B.   The Nationwide Defendants Have Been and Continue to Be Subject to Prosecution for Fraud by Authorities Across the Country

102.   Consumers ensnared by the Nationwide Defendants' scheme have shared Nationwide's fraudulent letters with media and law enforcement agencies, prompting numerous investigations and prosecutions by law enforcement.  In state after state, law enforcement authorities have condemned and brought actions against Nationwide for its predatory fraud designed to exploit those in positions of economic vulnerability.

103.   In Maryland, for example, Nationwide and Oakes have been charged with deceptive advertising as well as failing to provide promised services by the state Attorney General for their unregistered, illegal, predatory actions from at least 2017 through 2021 in that state.

104.   The Maryland charges highlight a host of deceptive and illegal practices by Nationwide and Oakes.  Among other things, Nationwide and Oakes "mailed advertisements to Maryland consumers that appeared to be from a Maryland court or another government agency.  The mailings threatened imminent bank account seizures or other collection actions unless consumers immediately called a toll-free number, that connected them to National Tax Experts.  Consumers who called were not, in fact, threatened with any imminent action, but instead were offered and sold National Tax Experts tax debt relief services – a service that National Tax Experts claimed would reduce their tax debts. . . .  National Tax Experts failed to provide the promised tax debt relief services for many of the Maryland consumers that hired the company."

105.   Nationwide and Oakes also charged Maryland consumers fees prohibited by state law and "engaged in various other activities that constitute unfair or deceptive trade practices and are prohibited by the Maryland Consumer Protection Act."

106.   Since at least 2017, Nationwide and Oakes "have advertised, offered for sale, and sold [their] tax debt relief services that, in exchange for the payment of up-front and other fees, purport to assist consumers in significantly reducing tax liabilities… [National and Oakes mail consumers with tax debt] an unsolicited advertisement for NTE's services.  Respondents' advertisements make claims that appear to be from a state court or another government agency."

107.   According to Maryland, the mailings sent by Nationwide and Oakes were designed to create "the appearance that they are a court or government agency," which "threaten[ed] legal action if the consumer does not call," when in fact Nationwide and Oakes could not even provide the tax relief services that terrorized individuals into calling them to overpay for.  In the words of the Maryland Attorney General, Nationwide and Oaks worked to "disguise who they are or misrepresent their ability to provide services they advertise."

108.   The Maryland charges confirm Oakes' role in the Nationwide fraud:  "At all times relevant to the allegations set forth herein, Respondent Oakes directed, oversaw, and managed the business activities of [Nationwide].  Respondent Oakes directly participated in or had the authority to control the activities of [Nationwide] described herein and had knowledge of these activities.  As such, Mr. Oakes is jointly and severally liable with [Nationwide] for the acts and practices described herein."

109.   Elsewhere in its Statement of Charges the Maryland Attorney General again emphasizes the active involvement of Oakes in the long-running fraudulent scheme:   "Oakes participated in the unfair and deceptive trade practices of [Nationwide].  Respondent Oakes possessed and exercised the authority to control the policies and trade practices of [Nationwide].  Respondent Oakes *is responsible for creating, implementing, and committing the unfair or deceptive policies and trade*

*practices*" of Nationwide (emphasis added).

110.   The Maryland Attorney General determined that Nationwide and Oakes had deceived consumers in at least the following ways:

      a.  representing that consumers are being contacted by a court or another government agency when, in fact, they were being contacted by Nationwide and Oakes;

      b.  making threats that consumers will face imminent bank account seizures or other government action when, in fact, Nationwide and Oakes have no specific knowledge about the potential for such action to occur against any individual consumer;

      c.  representing that they will perform extensive, complex, and meaningful tax debt relief services for consumers when, in fact, they have provided no or very limited services; and

      d.  falsely representing to consumers that Nationwide can lawfully provide tax debt relief when in fact it lacks required licenses and necessary registrations and thus cannot legally even sell tax debt relief services to consumers.

111.   The charges by a State Attorney General follow an official investigation and corroborate the key aspects of the fraudulent racketeering scheme described herein.

112.   Maryland is not the only place where Nationwide and Oakes have been telling lies and engaging in predatory practices to steal money from indebted consumers and customers from competitors.

113.   The Iowa Attorney General likewise commented that "misleading overdue tax notices" from Nationwide are "designed scare recipients."

114.   The Iowa Attorney General has stated that it received numerous Consumer Protection Division referrals from the Iowa Department of Revenue regarding the conduct of Nationwide and then-company president Nicholas Johnson.

115.   The Iowa AG noted that Nationwide's notices fraudulently impersonate various fake government senders "including the 'Department of Taxation – Internal Taxation Services,' 'Tax Settlement Department,' and the 'Taxing Authority – National Processing Center.'"

116.   The Iowa AG further noted the predatory tactics Nationwide employed, which involved "warn[ing] recipients that they owe past due taxes and state tax liens. The letters include wording such as 'immediate response required,' 'investigation letter,' and 'notice to collect.'"

117.   Confirming the fraudulent scheme described above, the Iowa AG went on:  "Recipients are instructed to immediately call a toll-free number, and are connected to National Tax Experts."

118.   Of Nationwide's fraudulent mailings, the Iowa Attorney General stated "These threatening mailings are clearly designed to look like official government notices and scare recipients into calling a phone number."

119.   The Attorney General of Idaho—one of the many State AGs to issue public warnings about the letters that the Nationwide Defendants send to the financially vulnerable—commented that "[a]ll scams pose a threat to those they target, . . . [b]ut this one is particularly concerning because of how official the mailing looks."

120.   Consistent with the conclusions of numerous state Attorneys General across the country, consumers themselves have also highlighted the Nationwide Defendants' fraudulent business practices.  On company review website Yelp!, for example, Nationwide has the lowest possible rating—one star.

121.   One reviewer recently reported that Nationwide pressures desperate debtors into taking large loans to pay its up-front fees, instructs its customers "to lie to the loan company's finance department" so that the loan will be approved, and then abandons them.  One review on Yelp! summed up their experience with Nationwide thus:  "I am currently a victim of this scam. Nationwide Tax Experts are taking

1   advantage of me because they know I am in a desperate situation:"

I am currently a victim of this scam. Nationwide Tax Experts are taking advantage of me because they know I am in a desperate situation. Nationwide Tax Experts said that if it was quiet and I was not hearing from them, it was because they were busy working hard for me on their end. It got really quiet after I was approved for the $3,500.00 loan.
Nationwide Tax Experts said that I needed to pay their $3,500.00 initial fee in order to work on my case to pay for their team. Nationwide Tax Experts asked that I take out a loan with a loan company if I cannot afford the initial $3,500.00. In order to get approved for the loan, Nationwide asked me to lie to the loan company's finance department telling them that I am currently employed so that the loan company would approve my loan.
Chris, Scott Jackson, John Matthews, and Hannah Brenner are just a few of the names I have heard Nationwide Tax Experts give as "their team working really hard for you."
It has been a couple of weeks now with no progress. Last night Nationwide Tax Experts asked for an additional $4,500.00 because they know that I have one day left to get the IRS whatever documentation the IRS needs, otherwise the IRS will take everything.

122.   Nationwide has engaged in various tactics in an attempt to outrun its criminal conduct.  These include operating illegally without necessary licenses and registrations, and never keeping the same (generic) name too long, so that when consumer complaints and investigations mount and enter the public domain, it can create a new alias to better rip off consumers and steal clients.

123.   Shedding its names like a snakes does its skin to avoid the latest wave of lawsuits by regulators and damning consumer reviews, Nationwide has repeatedly dissolved itself and re-incorporated or changed its name in an effort to stay one step ahead of the consequences of its predatory fraud, which spans more than a decade. The generic names are meant to confer anonymity and make it more difficult for consumers to associate Nationwide's long history of fraud with its latest re-branding.

124.   "Allstate Tax Group" was incorporated in California by attorney Scott Shapiro, acting on behalf of Patrick Oakes, in January 2006. Its right to operate has since been suspended by the California Franchise Tax Board, meaning it is not in good standing and has lost all rights to do business in California.

125.   "Travelers Tax Group" was incorporated in California by Patrick Oakes

Case No. 2:20-cv-10090-CAS-MAA
FIRST AMENDED COUNTERCLAIM COMPLAINT

in August 2006. Its right to operate has since been suspended by the California Franchise Tax Board, meaning it is not in good standing and has lost all rights to do business in California.

126. "Pacific Debt Solutions" was incorporated in California by Nicholas Johnson in August 2009.  Its right to operate has since been suspended by the California Franchise Tax Board, meaning it is not in good standing and has lost all rights to do business in California.

127. The following month, to the same address Nicholas Johnson incorporated "Integrated Debt Solutions Inc." in California.  Its right to operate has since been suspended by the California Franchise Tax Board, meaning it is not in good standing and has lost all rights to do business in California.

128. In 2011, "National Tax Experts" was created by Patrick Oakes, which was merged into Tax Relief, Inc. in 2018.

129. In 2012, Nicholas Johnson incorporated "IRS Tax Doctors" in California.  This company has since been dissolved.

130. The following year, Nicholas Johnson incorporated "National Consulting, Inc." in California to the same address.  This company was similarly dissolved.

131. "National Tax Group, Inc." was the next variation Nicholas Johnson chose to incorporate in California in 2014.  This, too, was conveniently dissolved.

132. Most recently, Nicholas Johnson incorporated "National Tax Experts" in as a separate entity in California in March of 2018 and later that year Patrick Oakes registered "Allstate Tax Group, LLC".

133. As noted above, this entity has been operating illegally across the country, including operating unlicensed and unregistered in Maryland, where it has systematically deceived consumers and stolen ATS' customers since at least 2017.

## CLAIMS FOR RELIEF

## CLAIM I

### Violation of Racketeer Influenced and Corrupt Organizations Act
### (RICO), 18 U.S.C. § 1962 *et seq.*

134.   Counterclaim Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

135.   Under 18 U.S.C. § 1962(c), it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."

136.   Under 18 U.S.C. § 1962(d), it is unlawful to conspire to violate 18 U.S.C. § 1962(c).

137.   Each of Nationwide, Next Level, Greenlaw, Allstate, Sasson, Rios, Oakes, Magiar, Levy, Lancaster, Johnson, Gray, and Baum is a "person" under 18 U.S.C. § 1961(3) because each is capable of holding a legal or beneficial interest in property.

138.   At all times relevant to Counterclaim Plaintiff's RICO claims, Sasson, Rios, Oakes, Magiar, Levy, Lancaster, Johnson, Gray, and Baum have been employed by and/or associated with Nationwide or its affiliated entities Next Level, Greenlaw, and Allstate.

139.   At all times relevant to Counterclaim Plaintiff's RICO claims, each of Nationwide, Next Level, Greenlaw, and Allstate has been an "enterprise" under 18 U.S.C. § 1961(4).   Separately, the Nationwide Defendants have been operating an associated-in-fact enterprise:   they created a cross-firm arrangement to pursue the common purpose of appropriating and exploiting ATS' customers, including by impersonating the government and violating telephone consumer protection laws. Under the structure the Nationwide Defendants created, responsibility for reaching out to consumers is divided between the Nationwide Defendants.

140.  Every Nationwide Defendant engages in interstate commerce by selling tax debt resolution services to consumers around the country.

141.  The Nationwide Defendants have engaged in hundreds, if not thousands, of acts of "racketeering activity"—and certainly more than the two acts required for a "pattern" under 18 U.S.C. § 1951(5)—as part of an ongoing scheme devised by Oakes and Johnson:

a.  **Mail and Wire Fraud.**  Each Nationwide Defendant repeatedly has committed mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 by using the mail and wire facilities as part of a scheme to obtain money through false or fraudulent pretenses.  In their mailings and phone calls to unsuspecting consumers with tax debt, Nationwide, Next Level, Greenlaw, Allstate, Sasson, Rios, Oakes, Magiar, Levy, Lancaster, Johnson, Gray, and Baum:  (i) impersonate government officials; (ii) lie about nonexistent imminent government enforcement actions, including suspension of social security benefits, garnishment of wages, property seizures, and indictments, and (iii) lie about their competitors ATS.  Some Nationwide Defendants' personnel also misrepresent their credentials.  Such fraudulent statements are designed to induce—and many times have successfully induced—consumers needlessly to pay the Nationwide Defendants redundant fees that had already been paid to ATS, including, fees for services that Nationwide never renders, as confirmed by state AG charges against Nationwide.

b.  **Extortion.**  Each Nationwide Defendant also has engaged in many acts of extortion under 18 U.S.C. § 1951 by obtaining property from victims, with their consent, through the wrongful use of fear. The Nationwide Defendants have extracted countless fees from

ATS' customers and prospects by pretending to be government officials and preying on their fear of jail time, losing their property, losing government benefits, having their wages garnished, or otherwise being the subject of government enforcement actions.

142.   Sasson—who has participated in making many of the fraudulent and extortionate phone calls, stolen proprietary information from ATS and provided it to Nationwide to facilitate the scheme, and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while "employed by or associated with" Nationwide and, alternatively, the associated-in-fact enterprise discussed above.

143.   Rios—who has participated in crafting the fraudulent and extortionate mailings, made many of the fraudulent and extortionate phone calls, and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while "employed by or associated with" Nationwide, Next Level, and Allstate and, alternatively, the associated-in-fact enterprise discussed above.

144.   Oakes—who has personally orchestrated the overall scheme, participated in crafting the fraudulent and extortionate mailings, made many of the fraudulent and extortionate phone calls, and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while "employed by or associated with" Nationwide, Next Level, and Allstate and, alternatively, the associated-in-fact enterprise discussed above.

145.   Magiar—who has participated in making many of the fraudulent and extortionate outbound phone calls using unlawful automated dialers, stolen proprietary information from ATS and provided it to Nationwide to facilitate the scheme, and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while "employed

by or associated with" Nationwide and, alternatively, the associated-in-fact enterprise discussed above.

146.   Levy—who has participated in making many of the fraudulent and extortionate outbound phone calls using unlawful automated dialers, and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while "employed by or associated with" Greenlaw and, alternatively, the associated-in-fact enterprise discussed above.

147.   Lancaster—who has knowingly provided the Nationwide Defendants with data derived from the fraudulent and extortionate mailings to further target ATS clients and prospects, and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while "employed by or associated with" Nationwide and, alternatively, the associated-in-fact enterprise discussed above.

148.   Johnson—who has personally orchestrated the overall scheme, participated in crafting the fraudulent and extortionate mailings, made many of the fraudulent and extortionate phone calls, and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while "employed by or associated with" Nationwide and, alternatively, the associated-in-fact enterprise discussed above.

149.   Gray—who has participated in crafting the fraudulent and extortionate mailings, stolen proprietary information from ATS and provided it to Nationwide to facilitate the scheme, and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity while "employed by or associated with" Nationwide and, alternatively, the associated-in-fact enterprise discussed above.

150.   Baum—who has participated in making many of the fraudulent and extortionate outbound phone calls using unlawful automated dialers and profited from the scheme—has violated and continues to violate 18 U.S.C. § 1962(c) by engaging

in a pattern of racketeering activity while "employed by or associated with" Greenlaw and, alternatively, the associated-in-fact enterprise discussed above.

151.   The Nationwide Defendants have worked in collaboration and by agreement to perpetrate the substantive RICO violations alleged herein, and thus all violated 18 U.S.C. § 1962(d).

152.   The Nationwide Defendants' RICO violations have proximately caused—and continue to proximately cause—injury to ATS and GATL because those violations have directly reduced their revenues and profits (in addition to harming their reputations, goodwill, and market shares)[1].

## CLAIM II

### Violation of the Lanham Act, 15 U.S.C. § 1125(a)

153.   Counterclaim Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

154.   The Lanham Act prohibits any person, including a business entity, from using in commerce any false or misleading representation of fact that is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of such person with another person.  Any person who believes that he, she, or it is or is likely to be damaged by such act has a civil claim against the person violating the statute.

155.   The Nationwide Defendants have violated the Lanham Act by pretending to be government officials in mailings to consumers, lying about imminent government enforcement actions in mailings to consumers and during phone calls with consumers, and making false and misleading statements about ATS to

---

[1]   Although the ATS Defendants challenged that such conduct could satisfy proximate causation, the Court's ruling denying their motion to dismiss is controlling at this stage of the case and therefore proximate causation for purposes of the countercliaims is alleged consistent with that ruling.  However, the ATS defendants reserve the right to revisit this issue at summary judgment upon a more developed record.

consumers.

156.   ATS has already suffered and are likely to keep suffering financial and other harm as a direct result of the Nationwide Defendants' deceptive conduct.

## CLAIM III:

## Unfair and Deceptive Trade Practices

157.   Counterclaim Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

158.   The Nationwide Defendants have violated and continue to violate numerous states' unfair and deceptive trade practices ("UDTP") statutes by:  mailing fraudulent and extortionate letters to consumers, defrauding and extorting consumers over the phone, inducing them to pay unnecessary fees, collecting fees for services they do not provide, and engaging in the other predatory and illegal acts described here.

159.   Consumers and Counterclaim Plaintiff alike are directly and foreseeably harmed by the Nationwide Defendants' unfair and deceptive trade practices.

160.   By the acts described above, the Nationwide Defendants have violated:

   a. California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, which broadly prohibits any "unlawful, unfair or fraudulent business act or practice";

   b. Iowa's Consumer Fraud Law, Chapter 714H, which prohibits, *inter alia*, any "unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact," Iowa Code § 714H.3(1);

   c. Maryland's Consumer Protection Act, Md. Code, Comm. Law § 13-301 *et seq.*, which authorizes suit against a company engaging in unlawful or unfair trade practices and prohibits practices including any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other

representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers";

d. Section 349 of New York's General Business Law, which prohibits deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations and the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission, in connection with the sale or advertisement of goods;

e. the UDTP statutes of other states where the Nationwide Defendants are targeting ATS customers.

## CLAIM IV

### Tortious Interference with Contractual Relations

161.  Counterclaim Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

162.  The Nationwide Defendants use ATS' lists of customers and potential customers for the express purpose of disrupting ATS' contractual relationships with its clients—their main source of revenue.

163.  The Nationwide Defendants intentionally target their fraudulent and extortionate mailings based on ATS' own mailings so that the Nationwide Defendants can disrupt Counterclaim Plaintiff's contractual relationships with clients to greatest extent possible.

164.  Once the Nationwide Defendants contact Counterclaim Plaintiff's customers over the phone and learn about their contracts with Counterclaim Plaintiff, the Nationwide Defendants maliciously make a series of fraudulent misrepresentations—including lies about ATS and misrepresentations about government enforcement actions—and urge ATS' customers to terminate those contracts.

165.   In direct reliance on the Nationwide Defendants' deceptive conduct, many of ATS' customers have terminated their relationships with Counterclaim Plaintiff.

166.   Specifically, California resident Ricardo Alvarez is one of the many taxpayers who have been duped by Defendants. In or around August 2020, when ATS was in the midst of addressing Mr. Alvarez's tax issues, he was contacted by Defendants or someone acting at their direction and led to believe that ATS was doing nothing for him, ATS was a fraud, and that Alvarez needed to hire Defendants to avoid imminent collection action. In a bizarre twist, Defendants then attempted to claim that ATS had stolen Alvarez from the Defendants, despite the fact that Alvarez's federal tax records show that ATS's representative declaration was the first such declaration filed for Alvarez"

167.   Additionally, Washington resident Roger Dearman is another taxpayer who has suffered at the hands of Defendants. In August 2020, while ATS was addressing his tax situation, he was contacted by Defendants or someone acting at their direction and led to believe that ATS was doing nothing for him, ATS was a fraud, and that Dearman needed to hire Defendants to avoid imminent collection action. Despite having performed substantial work for Mr. Dearman, ATS ended up having to refund a large part of Dearman's fee. Similar to Alvarez, Defendants then had the audacity to claim that ATS had stolen Dearman from the Defendants, despite the fact that Dearman's federal tax records show that the last representative declaration filed before ATS's was three years prior and there was no indication on Dearman's federal tax records that anyone was working on his account.

168.   On information and belief, Defendants took a similar approach in contacting Palm Desert, California resident Henrietta Ruiz and Boston, Massachusetts resident Edmund Davis. After successfully convincing each of these ATS clients to fire ATS and hire Defendants, Defendants then attempted to cover up their deception by claiming that ATS had stolen these clients from Defendants, when in fact these

1   clients' federal tax records either showed no prior representative declaration had been
2   filed or that nothing of substance had been done by any prior representatives in the
3   recent past before hiring ATS.

4        169.   The Nationwide Defendants' misappropriation of ATS' customers has
5   directly and proximately caused Counterclaim Plaintiff to lose profits and suffer harm
6   to their reputation and goodwill.

## **PRAYER FOR RELIEF**

8        WHEREFORE, Counterclaim Plaintiff respectfully prays for a Judgment:

9   a.  enjoining the Nationwide Defendants from (i) holding themselves out as
10       government agents and lying about imminent enforcement efforts; and
11       (ii) making misrepresentations about Nationwide to its customers;

12  b.  awarding compensatory damages in an amount to be determined at trial;

13  c.  awarding treble damages under RICO;

14  d.  awarding punitive damages;

15  e.  awarding costs and attorneys' fees under, among other laws, RICO, the Lanham
16      Act, and state deceptive and unfair practices laws; and

17  f.  granting any other relief the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

19       Under Rule 38(b) of the Federal Rules of Civil Procedure and Local Civil Rule
20  38-1, Counterclaim Plaintiff demands a trial by jury of all issues so triable that are
21  raised here or which hereinafter may be raised in this action.

23   Dated:  September 29, 2021            Respectfully submitted,

24                                        KIRAKOSIAN LAW, APC

26                          By:   */s/ Greg L. Kirakosian*
27                                GREG L. KIRAKOSIAN
                                  Attorneys for Counterclaimant
28                                AMERICAN TAX RELIEF, INC.

Case No. 2:20-cv-10090-CAS-MAA
                                        FIRST AMENDED COUNTERCLAIM COMPLAINT